848 P.2d 324

**ESTATE of John L. BOHN, Shirley Bohn, Donald and Mary Rutan, husband and wife, and Carl Linton, a single man, Plaintiffs–Appellants, Cross Appellees,**

v.

**Paul WADDELL, individually and as Director of the Department of Revenue of the State of Arizona; Department of Revenue of the State of Arizona, and Craig Cormier, individually and as the Assistant Director of the Arizona Department of Revenue, et al., Defendants–Appellees, Cross Appellants.**

No. 1 CA–TX 91–008.

Court of Appeals of Arizona, Division 1, Department T.

Sept. 29, 1992.

Review Denied April 13, 1993.

Bonn, Luscher, Padden & Wilkins, Chartered by Paul V. Bonn, Robert A. Jensen, Brian A. Luscher, Randall D. Wilkins, John H. Cassidy, Phoenix, and O'Neil, Cannon & Hollman, S.C. by Eugene O. Duffy, Gregory W. Lyons, Milwaukee, WI, for plaintiffs-appellants, cross appellees.

Grant Woods, Atty. Gen. by Gail H. Boyd, Asst. Atty. Gen., William D. Hostetler, Asst. Atty. Gen., Phoenix, for defendants-appellees, cross appellants.

## OPINION

TOCI, Judge.

During the tax years 1984 through 1988, Arizona's income tax laws exempted from income taxation 100% of state, county, and municipal retirement benefits paid to retired employees of those political entities, while exempting only the first $2,500 of federal retirement benefits paid to retired federal employees.

On March 28, 1989, the United States Supreme Court, in *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), invalidated a similar Michigan income tax scheme on the ground it violated the principles of intergovernmental tax immunity.

One month later several retired federal employees sued the Arizona Department of Revenue, claiming that the Arizona exemption statutes violated federal law. Although it declined to issue injunctive relief to the taxpayers, the tax court agreed. It concluded that the statutory scheme taxing federal pensions violated federal law because it did not tax state pensions in the same way. The tax court adopted a refund formula that refunded to federal retirees a small percentage of the taxes they paid on federal retirement benefits.

We hold that the tax court did not abuse its discretion in declining to issue injunctive relief to the taxpayers under 42 U.S.C. section 1983. We also hold, however, that the plaintiff-taxpayers' failure to exhaust their Arizona administrative remedies either in their individual or representative capacities prevented the tax court from ruling on their claims for Arizona income tax refunds. Accordingly, we vacate the tax court's opinions. In so doing, we do not reach the question of the propriety of the tax court's refund formula.

Because of our holding, we also need not determine the remaining issues concerning the scope and retroactivity of the United

States Supreme Court's decision in *Davis*. Similarly, we do not reach the question whether the taxpayers' attorneys are entitled to an award of attorney's fees under the "common fund" theory.

### ISSUES

(1) Were the taxpayers subjected to irreparable injury by the tax court's refusal to grant injunctive relief when the Department of Revenue announced that, despite the March 28, 1989 holding in *Davis*, it would penalize any federal employee who did not pay the Arizona income tax on federal pensions paid in 1988?

(2) Were the taxpayers required to exhaust their administrative remedies? To determine this issue, we must decide the following subordinate issues:

(a) Is the statutory refund scheme mandatory, or does the tax court have original jurisdiction of tax refund claims?

(b) Is it proper for an administrative agency to apply a constitutional doctrine to a state of facts before it?

(c) Was administrative review futile, thereby excusing the taxpayers from exhausting their administrative remedies?

### FACTS AND PROCEDURAL HISTORY

#### A. The Tax Court's Ruling Below

After the *Davis* decision, Arizona taxpayers Jack and Shirley Bohn, Donald and Mary Rutan, and Carl Linton filed a complaint in the Maricopa County Superior Court. They filed for themselves and all other residents of Arizona who received United States government retirement benefits during the period in question. The suit

claimed that Ariz.Rev.Stat.Ann. ("A.R.S.") section 43–1022(4)[1] violated federal law.

The complaint named the director and former directors of the Arizona Department of Revenue and their spouses as defendants. Invoking 42 U.S.C. section 1983 as authority for the action, it sought declaratory and injunctive relief, damages of "all monies unlawfully paid to or collected by the defendants under the authority of A.R.S. § 43–1022 ...," and attorney's fees and costs.

The defendants moved to dismiss the complaint or alternatively for summary judgment. The taxpayers filed a cross-motion for summary judgment, for declaratory and injunctive relief, and for class certification. *See* Ariz.R.Civ.P. 23(b)(2). The tax court granted the taxpayers' motion to amend their complaint to add the Department as a defendant and to state a separate claim for refund of Arizona income taxes paid on federal retirement benefits for the tax years in question.

After hearing argument on the cross-motions for summary judgment and the taxpayers' motions for class certification and declaratory and injunctive relief, the tax court: (1) granted appellees' motion to dismiss the taxpayers' damages claim under 42 U.S.C. section 1983; (2) denied the taxpayers' motion for injunctive relief; (3) treated military retirement pay the same as federal civil service retirement benefits; (4) held that the statutory scheme taxing federal pensions violated federal law because it did not tax state pensions in the same way; (5) granted plaintiffs refunds measured by "the difference between the tax federal pensioners paid on their pensions and what they would have paid had state taxpayers been similarly taxed"; (6) direct-

---

1. A.R.S. § 43–1022 provided in part:
 In computing Arizona adjusted gross income, the following amounts shall be subtracted from Arizona gross income:
 ....
 2. Contributions made to the state retirement system, the corrections officer retirement plan, the public safety personnel retirement system, the elected officials' retirement plan or a county or city retirement plan.
 3. Benefits, annuities and pensions received from the state retirement system, state retire-

ment plan, the corrections officer retirement plan, the public safety personnel retirement system, the elected officials' retirement plan or a county or city retirement plan.
 4. Income received as annuities under the United States civil service retirement system from the United States government service retirement and disability fund, in an amount of not to exceed two thousand five hundred dollars.

ed the Department to propose a refund plan consistent with that principle; and (7) announced it would not certify a class, provided the Department could devise an administrative plan to effectively administer the refund process under the doctrine of virtual representation.

Following these rulings, appellees moved to dismiss the taxpayers' second amended complaint. Their motion cited numerous grounds, including the theory that the tax court lacked jurisdiction of the refund claims because the taxpayers did not follow statutory administrative procedures. After briefing, the tax court denied the motion.

As directed, the Department submitted a proposed refund plan to the tax court. It designed the plan to operate with the named plaintiffs as "virtual representatives" of all nonparty taxpayers rather than as representatives of the putative class. After the parties had briefed the refund issue, the taxpayers' counsel filed a series of motions to join successively increasing numbers of named individuals as parties plaintiff. Each motion stated that it would be withdrawn if the court ultimately granted the taxpayers' pending motion for class certification. The tax court denied the motions.

### B. The First Opinion

On April 6, 1990, the tax court published its formal opinion pursuant to A.R.S. section 12–171. *See Bohn v. Waddell*, 164 Ariz. 74, 790 P.2d 772 (Tax 1990). Instead of permitting the case to proceed as a class action, the tax court adopted the "virtual representation" approach the Department proposed. Nevertheless, it rejected appellees' contention that the taxpayers' claim for refunds should be dismissed for failure to exhaust administrative remedies. Finally, the tax court explained in detail the legal theory supporting its decision to

award an economic remedy, and the method of calculating each taxpayer's refund.

### C. Events After the First Opinion

After the tax court filed its opinion, some 4,500 individual Arizona taxpayers, represented by the taxpayers' counsel, filed a motion to intervene as parties plaintiff. Characterizing the motion as having been filed "at this late date," the tax court denied it. The intervenors timely appealed from the tax court's formal order denying intervention. This court docketed their appeal as case No. 1 CA–TX 90–029.

The taxpayers moved for reconsideration, for a new trial, or alternatively to alter or amend the judgment. They also moved for an award of attorney's fees and expert witness fees. The taxpayers later requested clarification of the tax court's opinion, moved for an order withdrawing the tax court's opinion from publication, and moved for relief from the judgment.

The tax court denied the taxpayers' motions. It also declined to award attorney's fees to the taxpayers' counsel under the private attorney general doctrine or the "common fund" doctrine. Instead, it awarded the taxpayers attorney's fees limited to $105,000, plus costs, under A.R.S. section 12–348.

### D. The Supplemental Opinion

On March 7, 1991, the tax court issued a supplemental opinion that reaffirmed its original opinion of April 6, 1990. *See Bohn v. Waddell*, 167 Ariz. 344, 807 P.2d 1 (Tax 1991).[2] When the tax court issued its supplemental opinion, it simultaneously entered a final judgment approved by both sides as to form.

The taxpayers filed a timely notice of appeal. Appellees filed a timely notice of

---

**2.** The supplemental opinion primarily concerned the taxpayers' attack on the tax court's decision to grant them less than a full refund of taxes paid on federal pensions. The taxpayers relied on *McKesson Corp. v. Florida Div. of Alcohol & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), *American Trucking Ass'n, Inc. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110

L.Ed.2d 148 (1990) (plurality opinion), *Ashland Oil, Inc. v. Caryl*, 497 U.S. 916, 110 S.Ct. 3202, 111 L.Ed.2d 734 (1990), and *National Mines Corp. v. Caryl*, 497 U.S. 922, 110 S.Ct. 3205, 111 L.Ed.2d 740 (1990). The tax court determined that none of these decisions supported the taxpayers' renewed bid for a full refund.

cross-appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B).[3]

### DISCUSSION

#### I. The Law of Intergovernmental Tax Immunity

A long-standing principle once prohibited states from taxing federal instrumentalities. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) (discriminatory tax on United States bank unconstitutionally interfered with federal powers). This principle became known as the doctrine of intergovernmental tax immunity. At one point, the doctrine expanded to the point that neither federal or state governmental entities could tax the employees of the other. *See Collector v. Day*, 78 U.S. (11 Wall.) 113, 124–28, 20 L.Ed. 122 (1870) (invalidated federal income tax on state judge); *Dobbins v. Commissioners of Erie County*, 41 U.S. (16 Pet.) 435, 10 L.Ed. 1022 (1842) (invalidated state tax on federal officer).

Later, courts began to limit the doctrine of intergovernmental tax immunity. *See Helvering v. Gerhardt*, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938) (permitted nondiscriminatory federal tax on state pensions); *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 486–87, 59 S.Ct. 595, 601, 83 L.Ed. 927 (1939) (permitted nondiscriminatory state tax on federal employees). Furthermore, when Congress passed the Public Salary Tax Act of 1939, it specifically codified the requisite nondiscriminatory treatment for intergovernmental taxation. *See* 4 U.S.C. § 111.[4]

The United States Supreme Court invalidated Michigan's income tax scheme under these principles. *See Davis*, 489 U.S. 803, 109 S.Ct. 1500. It held that Michigan's tax laws unconstitutionally discriminated against individuals receiving federal retirement benefits. Michigan did not tax state and local retirement benefits, but it did tax federal civil service retirement benefits to the extent they exceeded $8,000 annually. The Supreme Court held this violated 4 U.S.C. section 111 and the principles of intergovernmental tax immunity. *See id.,* 489 U.S. at 817, 109 S.Ct. at 1508. When the plaintiff-taxpayers challenged the similar Arizona tax scheme, they relied on the holding in *Davis.*

#### II. Tax Court's Refusal To Issue Injunctive Relief

■ The taxpayers contend that the tax court abused its discretion when it refused to enjoin the individual appellees from enforcing the former Arizona statutory scheme that taxed federal retirement benefits differently from state retirement benefits. We do not agree. The tax court correctly found that the taxpayers had failed to demonstrate they would suffer irreparable harm unless injunctive relief was granted.

■ As the tax court noted, the Arizona legislature amended the statute shortly after the *Davis* decision to bring it into compliance with that decision.[5] *See* 1989 Ariz. Sess.Laws ch. 312, § 12. The state now taxes individuals receiving government pensions similarly, regardless of the pensions' origin. Abandonment of a challenged practice is an important factor in determining whether the tax court should have issued an injunction. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982) (though defendant's voluntary cessation of challenged practice does not deprive court of power to determine its legality, cessation is important fac-

---

3. By order of July 31, 1991, this court consolidated the oral arguments in 1 CA–TX 90–029 and 1 CA–TX 91–008. Both appeals were assigned to Department T of this court pursuant to A.R.S. §§ 12–120.04 and 12–170(C).

4. 4 U.S.C. § 111 provides in pertinent part:
The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a

duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

5. A.R.S. section 43–1022(2) now subtracts the first $2,500 of federal, military, state, and local retirement benefits from Arizona adjusted gross income. This results in nondiscriminatory taxation of federal and military retirement benefits.

tor bearing on whether court should exercise discretion to enjoin defendant from renewing practice). Under the statutory scheme as it now applies to tax years after 1988, no discriminatory taxation of the type condemned in *Davis* can occur under color of Arizona law.

Also, the tax court declined to enjoin further efforts by the individual appellees to collect income taxes on federal and military retirement benefits for tax years 1984 through 1988. The tax court based this ruling on these grounds:

> This Court has determined as excessive only a small portion of the income tax assessed an individual federal retiree in recent years. A taxpayer who, as a result of the Department's continuing collection effort, pays a tax that is later determined to be illegal as a result of the decision in *Davis* may have it refunded with interest. Suspending, or otherwise inhibiting, the Department's tax collection effort against all federal retirees would result in little ultimate benefit to the federal retiree taxpayer, even if preventing some illegal tax collection was the result. On the other hand, a serious disruption in the conduct of the Department's business could occur. This would be to the detriment of, not only the Department, but all non-federal retiree taxpayers in the state.

*Bohn*, 164 Ariz. at 88, 790 P.2d at 786.

Even if we assume that the taxpayers are entitled to refunds, and we do not reach that issue here, they did not show a need for injunctive relief. For the period 1984 through 1988, any affected taxpayers could have filed administrative refund claims with the Department of Revenue or protested assessments of unpaid taxes on federal or military retirement income. In fact, as of May 23, 1989, the taxpayers filed between 20,000 and 25,000 "protective" claims for refund. They could have pursued all properly filed claims or protests through the administrative process and into the superior court. *Cf. Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (injunction denied where other means available to ensure compliance with federal water pollution laws obviated necessity for injunction).

### III. Taxpayers' Failure To Exhaust State Administrative Remedies

The Department argued that the tax court should have dismissed the taxpayers' claim for state income tax refunds for failure to exhaust administrative remedies. The tax court rejected that argument on two grounds. First, it concluded that because no administrative process was in place that would provide an adequate remedy, exhaustion of administrative remedies was not required. Second, the tax court held that an administrative body has no power to determine whether a taxing statute is unconstitutional.

We disagree with the tax court. We hold that the tax court lacks jurisdiction over any claim for refund of taxes that has not been first properly presented to the Department of Revenue and the Board of Tax Appeals. We reach this conclusion because a statutory income tax administrative refund claim and appeal process was available, as a prerequisite to judicial relief, to process the federal taxpayers' claims. We also hold that a taxpayer may present a constitutional challenge in the administrative proceeding for the purpose of reducing or correcting his or her assessment.

### A. Exhaustion of Administrative Remedies

Our supreme court has recognized a public policy that discourages suits for the refund of taxes even when illegally collected. *Univar Corp. v. City of Phoenix*, 122 Ariz. 220, 223, 594 P.2d 86, 89 (1979); *Southern Pac. Co. v. Cochise County*, 92 Ariz. 395, 406, 377 P.2d 770, 778 (1963). At common law, taxes voluntarily paid could not be recovered. *Southern Pac. Co.*, 92 Ariz. at 406, 377 P.2d at 778. Accordingly, if parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures. If they fail to fully utilize all their administrative remedies, the superior court

lacks jurisdiction to consider their claim. *See Univar Corp.*, 122 Ariz. at 223, 594 P.2d at 89; *Mountain View Pioneer Hosp. v. Employment Sec. Comm'n*, 107 Ariz. 81, 85, 482 P.2d 448, 452 (1971) ("When a party fails to exhaust all his administrative remedies ... the trial court is without jurisdiction...."); *Williams v. Bankers Nat. Ins. Co.*, 80 Ariz. 294, 297 P.2d 344 (1956); *Oliver v. Arizona Dep't of Racing*, 147 Ariz. 83, 708 P.2d 764 (App.1985).

Under the exhaustion doctrine, litigants may not seek "judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). The rationale behind this doctrine permits "an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). This doctrine promotes judicial and administrative efficiency.

Courts have characterized the exhaustion rule as a rule of judicial administration that is usually applied by virtue of express statutory mandate. *Campbell v. Mountain States Tel. & Tel. Co.*, 120 Ariz. 426, 429, 586 P.2d 987, 990 (App.1978). However, our supreme court has held that the rule is not merely discretionary, but rather jurisdictional. *Mountain View Pioneer Hosp.*, 107 Ariz. at 85, 482 P.2d at 452. It also stated:

> [I]f the taxpayer desires to raise a question as to his taxes he is compelled to scrupulously follow the statutory procedures, *Smotkin v. Peterson*, 73 Ariz. 1, 236 P.2d 743 [1951], for the refund of taxes paid is by virtue of governmental grace rather than by reason of any legal right which the taxpayer has to such a refund. *State v. Airesearch Mfg. Co.*, 68 Ariz. 342, 206 P.2d 562 [1949].

*Southern Pac. Co.*, 92 Ariz. at 406, 377 P.2d at 778. More recently, the Arizona Supreme Court has acknowledged statutory prerequisites taxpayers must exercise before judicial review of challenged taxation and refund claims. *See Pittsburgh & Midway Coal v. Department of Rev.*, 161 Ariz. 135, 136, 776 P.2d 1061, 1062 (1989) (all taxpayers contesting various taxes in consolidated appeals exhausted administrative remedies before judicial review).

■ Here, both parties agree that none of the named plaintiffs or members of the putative class exhausted their state administrative remedies before filing this action for a refund. The taxpayers argue that they did not need to exhaust administrative remedies. Relying on the state constitution, the taxpayers contend that the superior court had original jurisdiction to hear their claims. This contention is misplaced. The constitutional provision on which they rely provides in part:

> The superior court shall have original jurisdiction of:
>
> . . . .
>
> 2. Cases of equity and at law which involve the title to or possession of real property, or the legality of any tax, impost, assessment, toll or municipal ordinance.

Ariz. Const. Art. 6, § 14(2); *see also* A.R.S. § 12–161.[6] Contrary to the taxpayers' position, this provision neither expressly nor impliedly prevents the legislature from conditioning the exercise of the superior court's jurisdiction on the taxpayers' exhausting available administrative remedies. *See Univar Corp.*, 122 Ariz. at 223, 594 P.2d at 89. *Cf. Pritchard v. State*, 163 Ariz. 427, 430, 788 P.2d 1178, 1181 (1990) (legislative divestiture of superior court jurisdiction must be clear and unambiguous); *Daou v. Harris*, 139 Ariz. 353, 356, 678 P.2d 934, 937 (1984).

6. **A.R.S. § 12–161. Definition of tax court**

A. In this chapter, unless the context otherwise requires, "tax court" means the tax department of the superior court in Maricopa county when exercising the original jurisdiction of the superior court over cases of equity and at law which involve the legality of any tax, impost or assessment.

B. This court shall be known as the Arizona tax court.

Furthermore, in *State Tax Comm'n v. Superior Court*, 104 Ariz. 166, 450 P.2d 103 (1969), our supreme court stated:

> We further hold that where taxes appear to have been imposed under semblance of authority and adequate remedies have been delineated in the taxing Statutes, the taxpayer must pursue such remedies to secure relief.

*Id.*, 104 Ariz. at 169, 450 P.2d at 106.

The legislature chose to create a statutory scheme that required the taxpayers to seek refunds of income taxes paid on federal retirement benefits. The rationale supporting the exhaustion doctrine is a practical one:

> The main purpose in requiring an administrative hearing is to remove the onus of a great volume of complicated tax cases from unnecessary judicial review and to initially place them before a specialized tribunal trained to handle such matters.

*Mountain View Pioneer Hosp.*, 107 Ariz. at 85, 482 P.2d at 452.

### B. The Administrative Remedy

█ The applicable statute provides in part:

Within the time limits in § 42–115 [four years from date of return], a taxpayer who fails to protest the payment of any tax illegally or erroneously collected may file a claim for refund of the taxes paid. Such refund claim shall then be governed by § 42–130 and this section.

A.R.S. § 42–124(B)(2). The refund claim statute provides the administrative notice and procedural requirements.[7]

An individual taxpayer must petition for a hearing on the denial of a refund claim within ninety days from the date the Department mailed its notice of action. A.R.S. § 42–122(A). The Department must consider the petition and grant a hearing at the taxpayer's request. *Id.* The Department's order or decision on the petition becomes final thirty days after the taxpayer receives notice of the order or decision, "unless the petitioner appeals the order or decision to the state board [of tax appeals]." A.R.S. § 42–122(C); *see also* A.R.S. § 42–171.

The statutory scheme also sets out the procedures for tax appeals to the state board. The governing statute provides that an aggrieved taxpayer may appeal to the state board of tax appeals within thirty days after receiving the decision or order being appealed.[8] The unsuccessful party

---

7. A.R.S. § 42–130 provides:
 A. If the department disallows any claim for refund, it shall notify the taxpayer accordingly. The department's action on the claim is final unless the taxpayer appeals to the department in writing within the time and in the manner prescribed by § 42–122. If the department disallows interest on any claim for refund, it shall notify the taxpayer accordingly and thereafter the claim shall be treated as a claim for refund.
 B. If the department fails to mail notice of action on any claim for refund of tax or interest within six months after the claim is filed, the taxpayer, prior to mailing of notice of action on the refund claim, may consider the claim disallowed. The taxpayer may appeal to the department for a hearing pursuant to § 42–122.

8. A.R.S. § 42–124 provides, in part:
 A. A person aggrieved by a final decision or order of the department under this article may appeal to the state board by filing a notice of appeal in writing within thirty days after the receipt of the decision or order from which the appeal is taken. The board shall take testimony and examine documentary evidence as neces-

sary to determine the appeal, all pursuant to administrative rules to govern such appeals. On determining the appeal the board shall issue a decision consistent with its determination. The board's decision is final on the expiration of thirty days from the date when notice of its action is received by the taxpayer, unless either the department or the taxpayer brings an action in superior court as provided in subsection B.
 B. The department or a taxpayer aggrieved by a decision of the board may bring an action in superior court subject to the following provisions:
 . . . .
 2. ... In the case of income tax the taxpayer may bring an action against the department in superior court without paying the tax, penalty or interest under protest. The action shall not begin more than thirty days after the order or decision of the board becomes final. Failure to bring the action within thirty days constitutes a waiver of the protest and a waiver of all claims against this state arising from illegality in the tax, penalties and interest so paid.... The superior court shall hear and determine the appeal as a trial de novo. Either party to such action may appeal to the court of appeals or supreme court as provided by law.

at the state tax board may then appeal to superior court. A.R.S. § 42–124(B)(2).

The statutory administrative refund claim and appeal process is not optional. Only one statute expressly authorizes a taxpayer to bring an action in the superior court to dispute Arizona income taxes. *See* A.R.S. § 42–124(B). This section describes such actions exclusively as "appeals" to be heard and determined by the superior court as trials *de novo* from decisions of the Board of Tax Appeals. *See id.*

### C. Exception to Exhaustion Rule

We now turn to the question whether one of the recognized exceptions to the doctrine of exhaustion of administrative remedies permits the taxpayers to file the refund claims directly in the superior court. For the reasons stated below, we find that none of the exceptions applies to excuse the taxpayers from exhausting their administrative remedies.

We also observe that the supreme courts of Oregon and Wisconsin have both dismissed *Davis*-related refund class actions because the plaintiffs failed to exhaust applicable administrative remedies. *Nutbrown v. Munn,* 311 Or. 328, 811 P.2d 131 (1991), *cert. denied,* — U.S. ——, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992); *Hogan v. Musolf,* 163 Wis.2d 1, 471 N.W.2d 216 (1991), *cert. denied,* — U.S. ——, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992).[9] The reasoning of those opinions is consistent with our rationale and holding in this case.

■■■ The doctrine of exhaustion of administrative remedies is subject to a limited number of recognized exceptions. When a statute expressly or impliedly authorizes a permissive administrative remedy, the exhaustion requirement does not apply. *Campbell v. Chatwin,* 102 Ariz. 251, 257, 428 P.2d 108, 114 (1967). Also, a court should not summarily apply the doctrine when a party challenges the agency's jurisdiction. *Id.* (citing K. Davis, *Administrative Law Treatise,* § 20.01 [1958] ). In addition, a party need not exhaust administra-

tive remedies when doing so would cause irreparable harm, or if the agency's expertise is unnecessary. *Univar Corp.,* 122 Ariz. at 224, 594 P.2d at 90. Finally, the exhaustion requirement is inapplicable when the administrative process would be useless or futile under the circumstances. *See Minor v. Cochise Cnty.,* 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980); *Zeigler v. Kirschner,* 162 Ariz. 77, 86, 781 P.2d 54, 63 (App.1989).

### 1. Mandatory Administrative Remedy Could Determine Refund Issue

■■■ We have already rejected the taxpayers' contention that the available administrative remedies were merely permissive. We also conclude that the Department of Revenue and the Board of Tax Appeals have authority to consider the constitutionality of a tax statute.

The taxpayers contend that the agencies in the Department of Revenue cannot consider constitutional questions even when they perform their statutory quasi-judicial function. We specifically rejected a similar argument in *Valley Vendors Corp. v. City of Phoenix,* 126 Ariz. 491, 616 P.2d 951 (App.1980). In that case, the City of Phoenix assessed sales and use taxes against the taxpayer. Instead of challenging the assessment administratively, the taxpayer sued directly in the superior court. The complaint alleged a discriminatory assessment of sales and use taxes, as well as double taxation. The plaintiff sought to have the city's use tax declared "void, illegal and unconstitutional" and enjoined its assessment. 126 Ariz. at 492, 616 P.2d at 952. One of the grounds for dismissing the complaint was the taxpayers' failure to exhaust administrative remedies. *Id.*

This court held that the taxpayer could have indeed raised constitutional issues in the City's administrative process. We stated:

> The basic issue to be tried is whether the taxpayer has been illegally taxed. *See*

---

**9.** The plaintiff-taxpayers in both these cases were represented by lead counsel for the taxpay-

ers in the instant case.

Phoenix City Code section 14–29(g), (e). The questions included within this issue can be wide-ranging and could very well include constitutional challenges.... Under section 14–29, ... there is no limitation upon the grounds that the taxpayer may present to reduce or correct his assessment. As long as he asserts these grounds in the petition, they are preserved for an action in superior court.

126 Ariz. at 494, 616 P.2d at 954 (citations omitted). *See also Dept. of Revenue v. Moki Mac River Expeditions,* 160 Ariz. 369, 372, 773 P.2d 474, 477 (App.1989) (Board of Tax Appeals erroneously concluded transaction privilege tax violated the Commerce Clause because the taxpayer did not have enough business contacts with Arizona). Furthermore, the procedure upheld in *Valley Vendors* contains very similar language to the tax refund procedure challenged in this case. 126 Ariz. at 492, 616 P.2d at 952. Likewise, here the statute does not limit the grounds that the appellants may raise in the refund process. *See* A.R.S. §§ 42–124 and –130.

We also reject the taxpayer's argument that *Arizona Corp. Comm'n v. Tucson Gas, Elec. Light & Power Co.,* 67 Ariz. 12, 189 P.2d 907 (1948) and *Manning v. Reilly,* 2 Ariz.App. 310, 408 P.2d 414 (1965), stand for the proposition that exhaustion of administrative remedies is not required. In *Tucson Gas* the court stated: "The Corporation Commission apparently knew it had no right to construe the constitutionality of [the statute], it being its duty to assume the law was constitutional." 67 Ariz. at 14, 189 P.2d at 908. This statement is pure dictum, without any citation of supporting authority. We conclude it has little precedential value.

In addition, *Manning* is not on point. There, the issue was whether a zoning ordinance was properly enacted. Division Two observed that the zoning board of adjustment had the traditional limited power to issue variances of the zoning code, but no power to determine the constitutionality of the zoning ordinance. 2 Ariz.App. at 312, 408 P.2d at 416. The court concluded it would serve no purpose to require one to exhaust administrative remedies when the board of adjustment could not pass on the constitutionality of the enactment of the zoning ordinance. *Id. Manning* does not cast doubt on our more-recent decision in *Valley Vendors.*

The taxpayers also cite a Board of Tax Appeals' decision in support of their argument that the agency cannot decide their refund claims because resolution would involve constitutional claims. *See Chase Distrib. v. Arizona Dep't of Revenue,* No. 489–86–S, slip op. at 2 (Ariz. Bd. of Tax App., June 7, 1988). However, the taxpayers' argument fails to draw a critical distinction.

Professor Davis' *Administrative Law Treatise* recognizes the distinction we draw here:

> A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. When a tribunal passes upon constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon constitutionality of the legislation, the question is whether it shall take action which runs counter to the legislative intent. We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation. Only the courts have authority to take action which runs counter to the expressed will of the legislative body.

*Id.,* § 20.04, p. 74 (1958) (footnote omitted) (emphasis supplied). The Board of Tax Appeals' decisions impliedly acknowledge this distinction. While noting it does not have the power to declare statutes unconstitutional, the Board has nevertheless applied constitutional doctrines and federal law when resolving claims. *See, e.g., Tucson Mech. Contracting, Inc. v. Arizona Dep't of Revenue,* No. 607–88–S (Ariz. Bd. of Tax App., Nov. 28, 1989) (assessment against in-state contractors did not violate Equal Protection); *Lloyd Constr. Co. v. Arizona*

*Dep't of Revenue,* No. 668–89–S (Ariz. Bd. of Tax App., Nov. 28, 1989) (alleged discriminatory enforcement of tax laws claimed to violate U.S. Constitution); *Ryan v. Arizona Dep't of Revenue,* No. 651–89–I (Ariz. Bd. of Tax App. Nov. 11, 1989) (adopting federal tax code definition did not violate U.S. Constitution). Contrary to the taxpayers' assertion, the board could have applied constitutional doctrines to their refund claims. *Valley Vendors,* 126 Ariz. at 494, 616 P.2d at 954.

Finally, we observe that even where "[a]n agency has no particular expertise to decide on the constitutionality of its own enabling act and will not ordinarily rule on the issue in any event," exhaustion of remedies has been still been required. *Weyerhaeuser v. Marshall,* 592 F.2d 373, 376 (7th Cir.1978) *See, e.g., W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967). Exhaustion permits the agency to "develop the factual record so that the court will not have to decide 'important and difficult' questions of constitutional law" in the absence of a factual background. *Id.* at 312, 88 S.Ct. at 452. Furthermore, during administrative review "the agency may decide favorably to the aggrieved party on other grounds, thus mooting the constitutional issue and relieving the courts of the need to decide it." *Id.* Thus, even if the taxpayers were correct in their argument that constitutional doctrines cannot be applied by the Department, exhaustion of remedies would be appropriate.

Here, the taxpayers' challenged discriminatory taxation of their pension income. However, they also sought a refund of taxes they paid under the former statutory scheme. The issue involved the application of the constitutional doctrines and federal law in the *Davis* holding to each taxpayer's right to a refund. It was a proper subject for the administrative process.

### 2. *Administrative Appeal Process Would Have Been Useful, Not Futile*

 The tax court concluded that the statutory administrative process would not and could not have provided the refunds

the taxpayers were seeking. The tax court stated:

> Indeed, the only evidence on the point, proffered by the Plaintiffs, reflects just the opposite. The public comment on the *Davis* decision by the Department was that the Department would await a judicial determination before it would recognize any claim based on *Davis.*

*Bohn,* 164 Ariz. at 87, 790 P.2d at 785. *Cf. White Mountain Apache Tribe v. Hodel,* 840 F.2d 675, 677–78 (9th Cir.1988) (exhaustion may not be required when administrative review futile because of preannounced decision by final administrative decision maker or existence of objective and undisputed evidence of administrative bias). We disagree with the trial court.

We hold that the Department's announcement in the early stages of the case that it would deny *Davis*-related tax refunds did not render the statutory administrative process futile. The Board of Tax Appeals, an independent agency not under the control of the Department of Revenue, is the final decision maker in the administrative process. The taxpayers did not raise any issue of bias on the part of the Board of Tax Appeals. We also conclude that the knowledge and experience of the Department of Revenue and the Board of Tax Appeals were both necessary and significant in resolving the taxpayers' claims.

The tax court cites *Town of Paradise Valley v. Golf Leisure Corp.,* 27 Ariz.App. 600, 557 P.2d 532 (1976), in support of its position. This case is not on point. In *Paradise Valley,* the town council had not established an administrative review procedure for its final actions. The town unsuccessfully argued that the claimant should have reapplied to the same town council for a zoning variance. This court held that reapplication would have been futile because it was physically impossible to grant relief given the unavailability of additional acreage. 27 Ariz.App. at 610, 557 P.2d at 542.

The taxpayers argue that because the Department publicly announced that it would deny any refunds in absence of a court order, the administrative process was

futile. They also contend that the current and former directors of the Department of Revenue, originally sued in their individual capacity, were biased against them. The taxpayers claim that applying the doctrine of exhaustion of remedies would violate their right to due process. We disagree with taxpayers.

The Department's administrative hearing division was never given the opportunity to consider the refund question. The Department's director never had the benefit of the evidence, legal arguments and findings the departmental hearing process would have generated. Furthermore, the Board of Tax Appeals issues the final decision in the administrative appeal process. The record contains no evidence that the Board of Tax Appeals had prejudged the issue. The Board is independent of the Department of Revenue and not subject to its control. *See* A.R.S. § 42–171(A) (It is "an independent agency which shall not in any way be subject to the supervision or control of the department of revenue.").

We further reject any implication that the exhaustion requirement should not apply here because the administrative agencies' expertise was unnecessary. We take judicial notice that persons hearing administrative appeals within the Department of Revenue and the Board of Tax Appeals have considerable legal and factual knowledge and experience with tax-related issues.

Additionally, the refund claims would raise issues that necessarily present practical questions about the calculation and mechanics of any refunds. In *Valley Vendors*, we said "[a]nalysis and determination of these issues would seem particularly suited to examination by administrative tax specialists." *Id.*, 126 Ariz. at 494, 616 P.2d at 954. The same considerations exist here.

### 3. Effect of Putative Class Status

The taxpayers further contend that they were excused from having to exhaust their available administrative remedies. In support, they rely on the class action allegations in their claim for tax refunds. Their contention is without merit.

The taxpayers' unsuccessful effort to seek class certification does not excuse their failure to exhaust administrative remedies. The rule requiring parties to exhaust administrative remedies extends to actions brought on behalf of a class. The cases generally agree that a class action cannot be maintained unless at least one member of the putative class has exhausted applicable administrative remedies. *Zeigler*, 162 Ariz. at 85, 781 P.2d at 62. The taxpayers cannot avoid this requirement simply because the tax court denied class certification. Even if the court had granted certification, at least one member would still be required to exhaust administrative remedies.

Here, a representative of the putative class could have exhausted appropriate remedies. *See Zeigler*, 162 Ariz. at 85, 781 P.2d at 62; *see also Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976) (class action for state tax refunds properly dismissed due to named plaintiffs' failure to follow statutorily prescribed administrative refund procedure); *Stenhouse v. Lynch*, 37 N.C.App. 280, 245 S.E.2d 830 (1978) (absent timely demand for refund, class action for refund of state income taxes properly dismissed). Alternatively, an administrative claim may be filed on behalf of a class under some circumstances. *See Andrew S. Arena, Inc. v. Superior Court*, 163 Ariz. 423, 788 P.2d 1174 (1990) (permitting a class claim against a public entity for building permit fees). None of the taxpayers exhausted the statutorily prescribed administrative refund procedure in this case.

### CONCLUSION

We hold that the tax court erred when it did not dismiss the taxpayers' refund claim. Arizona law required the taxpayers to follow the administrative procedure to obtain a tax refund. None of the taxpayers exhausted available administrative remedies. No recognized exception to the exhaustion rule excused their failure to follow the administrative refund procedure. Therefore, the tax court did not have subject matter jurisdiction.

Because of our holding, we do not decide the issue of whether the tax court erred when it refused to certify a plaintiff class, and instead relied on the doctrine of virtual representation for effecting refunds. Similarly, we do not approve of the tax court's refund formula.

We affirm the tax court's order denying injunctive relief. The tax court, however, should have dismissed the taxpayers' claims because they did not exhaust their administrative remedies. Because we reverse in part, we vacate the tax court's opinions below, and we remand for proceedings consistent with this opinion.

GRANT, P.J., and LANKFORD, J., concur.