IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

<table>
<tr><td>MARK J. MULLENAUX and REGINA<br>MULLENAUX, husband and wife,</td><td>)<br>)<br>)</td><td>2 CA-CV 2003-0130<br>DEPARTMENT A</td></tr>
<tr><td style="text-align:right">Plaintiffs/Appellants,</td><td>)<br>)</td><td>O P I N I O N</td></tr>
<tr><td style="text-align:center">v.</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>GRAHAM COUNTY,</td><td>)<br>)</td><td></td></tr>
<tr><td style="text-align:right">Defendant/Appellee.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

APPEAL FROM THE SUPERIOR COURT OF GREENLEE COUNTY

Cause No. CV2003002

Honorable William J. Schafer, III, Judge

AFFIRMED

Watters & Watters, P.C.
  By Andrea E. Watters                                                    Tucson
                                          Attorneys for Plaintiffs/Appellants


Jones, Skelton & Hochuli, P.L.C.
  By Georgia A. Staton and Abby L. Ewing                                  Phoenix
                                          Attorneys for Defendant/Appellee

B R A M M E R, Presiding Judge.

¶1        Mark Mullenaux and his wife appeal from the trial court's order granting summary judgment in favor of Graham County on Mark's wrongful discharge, breach of contract, and defamation claims. On appeal, Mullenaux argues that his failure to raise his claims before the

Graham County Merit Commission does not, as the trial court apparently concluded, preclude them. He also contends that a qualified privilege does not, as the court implicitly found, immunize the County from liability on his defamation claim.[1] We affirm.

## Standard of Review

¶2 We determine de novo whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 965 P.2d 47 (App. 1998). In doing so, we view the facts and the reasonable inferences from them in the light most favorable to the party against whom the judgment was entered. *Id.* Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2. Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). To withstand a motion for summary judgment, the opposing party must set forth facts showing that a genuine issue of material fact exists that would preclude judgment in favor of the moving party. Ariz. R. Civ. P. 56(c).

## Facts and Procedural History

¶3 In January 1993, Mullenaux began working full time for Graham County as an equipment operator. From 1993 to January 2001, Mullenaux appears to have received one written

---

[1]The trial court did not state its reasons for granting the County's motion for summary judgment. In its one-sentence minute entry, the court stated: "The Court grants Defendants' Motion for Summary Judgment 'on the entirety of Plaintiff's Complaint.'"

2

reprimand for his work performance, issued December 21, 2000, for negligently damaging a County vehicle.

¶4 On February 16, 2001, Mullenaux informed County authorities that he suspected his supervisors, including his foreman Charles Weaver, were stealing and misusing County property. One week later, Mullenaux was demoted and assigned to yard duty. The County investigated Mullenaux's allegations and found most of them to be unsubstantiated. During the investigation, however, the County became aware of threats Mullenaux allegedly had made to Weaver. Accordingly, Mullenaux received a written reprimand for violating Graham County Merit Rule 601(3), which prohibits "physical or verbal conduct or behavior that is offensive, coercive, abusive, or threatening."

¶5 Approximately two months later, Weaver and Tommy Henrix, Loss Control Manager for the Arizona Counties Insurance Pool, summoned Mullenaux to a meeting to discuss Mullenaux's numerous claims for workers' compensation benefits, which were based on Mullenaux's assertion that he had suffered an industrial accident and had injured his back. Weaver and Henrix told Mullenaux that any future workers' compensation claims would be investigated for their legitimacy and that, if he was found to have made a fraudulent claim, he would receive "disciplinary action commensurate with the offense."

¶6 In January 2002, the County terminated Mullenaux for "a cumulative sense of dissatisfaction with [his] performance." The letter of termination cited one verbal and three written reprimands and referred to a January 2002 incident in which Mullenaux allegedly had "antagonized a department employee" by making sexual statements about the employee's wife. The letter also informed Mullenaux that he could only appeal his termination in accordance with the Graham

3

County Merit System Manual's grievance procedures. The portion of those grievance procedures that appear in the record provide the following three-step process for presenting grievances to the County:

> 1. Step One: The employee shall first present the grievance in writing to the Department Head . . . [who] shall review . . . the complaint and shall give a written response . . . within ten days.
>
> 2. Step Two: If the employee is dissatisfied with the response received from the Department Head, [he or she] may file a written request for review of the grievance by the County Manager . . . [who] shall convene a meeting . . . [and] shall render a written response to the employee. . . .
>
> 3. Step Three: If the employee is dissatisfied with the response received from the County Manager, [he or she] may file a written request for review of the grievance by the Merit Commission. . . . The decision of the Merit Commission shall be the final administrative authority over the grievance . . . [and] shall be final and binding on all parties to the grievance.

The County's Merit System Manual also provides:

> Most grievances shall begin at Step One of the grievance procedure with the exception of grievances regarding a demotion, suspension without pay, dismissal, unlawful discrimination, sexual harassment, or in any case where the grievance is being filed against a Department Head. Under the exceptions noted, the grievance procedure shall begin at Step Two.[2]

Mullenaux does not dispute that the County had properly adopted these procedures.

¶7        The County denied Mullenaux's written protest of his discharge, made pursuant to Step One of the grievance procedures. Because he perceived that bias against him by both the

---

[2]This portion of the Merit System grievance procedure was set forth in an unmarked document contained in the record. At oral argument, the parties agreed it is part of the Merit System Manual procedures.

4

County Manager and the Merit Commission would render futile taking any further grievance steps, Mullenaux did not pursue his grievance any further through administrative channels. Instead, in August 2002, he sued the County for wrongful discharge and breach of contract.

¶8 Shortly after Mullenaux filed his lawsuit, Graham County Manager Terry Cooper received a request for public records from Tom King, the managing editor of the Eastern Arizona Courier. King requested a copy of the insurance investigation report prepared by Douglas Muell on Mullenaux's allegations that his foreman had been stealing and misusing County property. Muell's report also contained the results of Muell's investigation into Mullenaux's reported threatening behavior. It is undisputed that, before complying with King's request, Cooper notified Mullenaux's attorney and afforded her an opportunity to object to the release. Counsel stated that Mullenaux had no objection to dissemination of the investigative report. Cooper released Muell's report in its entirety to King. On August 29, 2002, King published a story entitled "County sued," which not only described Mullenaux's action against the County but also discussed Mullenaux's allegedly threatening behavior toward Weaver.

¶9 In September 2002, following publication of King's story, Mullenaux amended his complaint to add a defamation claim against the County. Mullenaux alleged in his amended complaint that he had been wrongfully discharged based on whistleblower retaliation, retaliation for seeking workers' compensation benefits, breach of contract, and defamation. The County moved for summary judgment on all counts, arguing that Mullenaux's failure to exhaust his administrative remedies through the County's grievance procedures precluded his wrongful discharge and breach of contract claims. The County argued it was entitled to summary judgment on the defamation claim because its obligations under the Public Records Law, A.R.S. § 39-121,

5

afforded it a qualified privilege "as a matter of law." The trial court granted summary judgment in favor of the County on all of Mullenaux's claims.

Discussion

Wrongful Discharge and Breach of Contract Claims

¶10          Mullenaux contends the trial court erred in concluding that his failure to contest his termination through the County's grievance procedure precluded his wrongful discharge and breach of contract claims. We disagree.

a) Administrative Procedure

¶11          That portion of the Arizona law dealing with "county employee merit systems" is found in chapter 2, article 10 of title 11, A.R.S. §§ 11-351 through 11-356. Section 11-356 provides:

> A.   Any officer or employee in the classified civil service may be dismissed, suspended or reduced in rank or compensation by the appointing authority after appointment or promotion is complete only by written order, stating specifically the reasons for the action. The order shall be filed with the clerk of the board of supervisors and a copy thereof shall be furnished to the person to be dismissed, suspended or reduced.
>
> B.   The officer or employee may within ten days after presentation to him of the order, appeal from the order through the clerk of the commission. Upon the filing of the appeal, the clerk shall forthwith transmit the order and appeal to the commission for hearing.
>
> C.   Within twenty days from the filing of the appeal, the commission shall commence the hearing and either affirm, modify or revoke the order. The appellant may appear personally, produce evidence, have counsel and, if requested by the appellant, a public hearing.

6

> D. The findings and decision of the commission shall be final, and shall be subject to administrative review as provided in title 12, chapter 7, article 6.

The parties do not dispute that the County's grievance process was adopted pursuant to article 10. Employee dismissals are clearly matters that must be pursued within the grievance process, and Mullenaux's claims fairly fall within the purview of the County's Merit System's grievance procedures.

¶12 In support of the trial court's grant of summary judgment in favor of the County on Mullenaux's wrongful discharge claim, the County relies, as it did in the trial court, on Guertin v. Pinal County, 178 Ariz. 610, 875 P.2d 843 (App. 1994). In Guertin, the plaintiff sued Pinal County after the county dismissed him. The plaintiff had unsuccessfully appealed his discharge to the county merit commission, but did not seek judicial review of the adverse decision. Instead, the plaintiff sued Pinal County alleging, inter alia, that he had been wrongfully discharged. This court found that the plaintiff's wrongful discharge claim was "squarely within the jurisdiction of the county merit system" and that his exclusive remedy was to appeal the decision in accordance with the Administrative Review Act, A.R.S. §§ 12-901 through 12-914. 178 Ariz. at 612, 875 P.2d at 845. Mullenaux's wrongful discharge claim, based specifically on whistleblower retaliation and his having made a claim for workers' compensation benefits, also falls within the Graham County Merit Commission's jurisdiction.

¶13 Mullenaux contends, however, that the use of the word "may" in Steps Two and Three of the grievance procedures renders them permissive. See Campbell v. Chatwin, 102 Ariz. 251, 428 P.2d 108 (1967) (when administrative remedies are permissive, a party need not exhaust them). He contends, therefore, that he was not required to pursue them as a prerequisite to filing

7

his action. The County insists that its grievance procedures are mandatory and that the word "may" simply affords an employee the option of not pursuing further review. As a result, the County contends, Mullenaux's claims are barred under § 12-902(B), which states: "Unless review is sought of an administrative decision within the time and in the manner provided in this article, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of the action."

¶14 Arizona case law solidly supports the County's argument that the presence of the word "may" in an administrative procedure does not necessarily render the procedure permissive. See Estate of Bohn v. Waddle, 174 Ariz. 239, 848 P.2d 324 (App. 1992) (statutory administrative process for tax refund claims and appeals mandatory despite use of word "may"); Gilbert v. Bd. of Med. Exam'rs, 155 Ariz. 169, 745 P.2d 617 (App. 1987) (statute's use of "may" rather than "shall" does not render it permissive); Farmers Inv. Co. v. Ariz. State Land Dep't, 136 Ariz. 369, 666 P.2d 469 (App. 1982) (finding on rehearing that word "may" does not make statute optional and merely affords opportunity not to appeal); Ariz. Law Enforcement Merit Sys. v. Dann, 133 Ariz. 429, 652 P.2d 168 (App. 1982) (word "may" signifies only the option to decline further review).[3] Mullenaux cites only Southwestern Paint & Varnish Co. v. Arizona Department of Environmental Quality, 194 Ariz. 22, 976 P.2d 872 (1999), as support for his argument that the word "may" denotes permissiveness. Although Mullenaux is correct that, in Southwestern Paint, our supreme court found that "a rule providing for rehearing of an administrative decision that

_____

[3]We recognize that, although our supreme court disapproved many of these cases in Southwestern Paint & Varnish Co. v. Arizona Department of Environmental Quality, 194 Ariz. 22, 976 P.2d 872 (1999), its disapproval was based on issues independent of the interpretation of the word "may."

contain[ed] the word 'may' [was] permissive," he does not accurately characterize the holding in that case. There, our supreme court held that a party who had pursued an administrative procedure to a final decision did not need to request an agency rehearing of that decision before seeking judicial review of the agency's final action.[4] The court did not hold, as Mullenaux suggests, that a rule containing the word "may" is always permissive. The exhaustion analysis of Mullenaux's wrongful discharge claim applies equally to his breach of contract claim, requiring that it also must have been pursued through the county's administrative procedures.

¶15        We find the County's argument correct and conclude that Mullenaux was required to pursue Steps Two and Three of the grievance procedures to obtain further review of his wrongful discharge and breach of contract allegations before he could sue the County on those claims. We decline to adopt Mullenaux's interpretation of that process, which would render it permissive.

b) Statutory Bases for the Claims

¶16        Mullenaux also claims that independent statutory bases permit him to bring his wrongful discharge claim in superior court, notwithstanding his failure to pursue the County's administrative process to a final conclusion. Mullenaux asserts that his claim arises under the Arizona Employment Protection Act (AEPA), A.R.S. § 23-1501(3), which provides, in pertinent part, as follows:

---

[4]The conceptual distinction between exhaustion of administrative remedies and the finality of an administrative agency's decision has also been noted in Darby v. Cisneros, 509 U.S. 137, 113 S. Ct. 2539, 125 L. Ed. 2d 113 (1993).

9

3. An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred:

. . . .

(c) The employer has terminated the employment relationship of an employee in retaliation for any of the following:

. . . .

(ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

(iii) The exercise of rights under the workers' compensation statutes prescribed in chapter 6 of this title.

¶17 As further support for his contention that the superior court had jurisdiction to decide this claim, Mullenaux cites A.R.S. § 38-532, which identifies whistleblower retaliation as a "prohibited personnel practice" and creates a cause of action against an employer for engaging in such practices. Division One of this court has held that a nonclassified employee need not exhaust his or her administrative remedies under § 38-532 before maintaining an action for wrongful discharge under that statute. Walters v. Maricopa County, 195 Ariz. 476, 990 P.2d 667 (App. 1999) (in context of § 38-532, administrative remedies are permissive, and nonclassified employee may file action in superior court without exhausting such remedies).

10

¶18 The County responds that, because Mullenaux did not specifically cite either § 23-1501 or § 38-532 in his complaint to support his claim, he has only raised a common law claim, and there is no longer a common law cause of action for wrongful termination. As Mullenaux correctly observes, however, Arizona is a notice pleading state. See Rosenberg v. Rosenberg, 123 Ariz. 589, 601 P.2d 589 (1979). A pleading need only contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, and our courts have long held that "failure to make reference to a statute [in a complaint] is not fatal to a claim." Toney v. Bouthillier, 129 Ariz. 402, 408, 631 P.2d 557, 563 (1981); see also Logan v. Forever Living Products Int'l, 203 Ariz. 191, 52 P.3d 760 (2002) (if employee's claim cognizable under AEPA, it should not be dismissed); Mercer v. Vinson, 85 Ariz. 280, 288, 336 P.2d 854, 860 (1959) ("[P]ublic statutes need not be pleaded or offered into evidence since courts will take judicial notice thereof."). Accordingly, we reject the County's argument that Mullenaux's complaint was deficient and failed to properly state the claim.

¶19 We note that § 23-1501(3) applies to all employees, whether public or private. See Taylor v. Graham County Chamber of Commerce, 201 Ariz. 184, ¶8, 33 P.3d 518, ¶8 (App. 2001) (APEA "applies to all employers"). By contrast, § 38-532 applies only to public employees. See A.R.S. § 38-531(1) (defining "employee" as used in § 38-532 as including county employees). By providing direct causes of action, both sections appear to be inconsistent with the administrative requirements of § 11-356, which also applies only to public employees. When statutes appear to be inconsistent, we "attempt to harmonize their language to give effect to each." UNUM Life Ins. Co. of Am. v. Craig, 200 Ariz. 327, ¶11, 26 P.3d 510, ¶11 (2001). The provisions of § 11-356,

11

which include requiring an employee to exhaust his or her administrative remedies, can be harmonized with those of § 38-532 and § 23-1501.

¶20    A classified public employee who has a claim that is subject to a merit system administrative procedure must pursue the claim through that procedure. If the employee is successful in the administrative proceeding, further legal action may be obviated. Additionally, claims that the employee raised or could have raised in the administrative proceeding will likely be barred from subsequent litigation in superior court by res judicata. See Pinkerton v. Pritchard, 71 Ariz. 117, 223 P.2d 933 (1950) (res judicata applies both to claims actually raised and claims capable of having been raised); Hawkins v. State, 183 Ariz. 100, 900 P.2d 1236 (App. 1995) (res judicata applies to certain administrative agency decisions). However, the employee could still file an action in superior court asserting any claims under § 23-1501 and § 38-532 that were neither completely resolved in nor precluded by the administrative process. And the employee retains the option of appealing the final agency action to superior court pursuant to § 12-902(B). Therefore, application of § 11-356 to Mullenaux's claims does not conflict with or diminish the effectiveness of either § 38-532 or § 23-1501.

¶21    Mullenaux also relies on Walters to support the proposition that he can maintain his statutory causes of action without exhausting his administrative remedies. In Walters, Maricopa County dismissed a nonclassified employee after he had threatened to report the county's illegal activity to the attorney general. In its termination letter, which did not include a specific reason for the termination, the county told the employee he did not have a right to appeal the termination. Division One of this court concluded that § 38-532 permits a nonclassified employee to file an action in superior court without exhausting the statute's permissive administrative remedies. The

12

court also stated in dicta that, if the administrative procedure provided by § 38-532 were regarded as mandatory, it would effectively repeal § 23-1501(3)(c)(ii) by "taking away" the right to file a wrongful termination action. Walters, 195 Ariz. 476, ¶25, 990 P.2d 677, ¶25. The court did not discuss, however, the nature of administrative remedies created by § 11-356; rather, it addressed remedies specifically provided in § 38-532. Further, Mullenaux was not a nonclassified employee. Consequently, Walters is not applicable here.

¶22 We conclude, then, that a classified public employee must exhaust his or her administrative remedies available under the system provided by §§ 11-351 through 11-356 before filing an action in superior court under § 23-1501 or § 38-532. Although Mullenaux's failure to cite either § 23-1501 or § 38-532 in his complaint to support his allegations neither invalidates nor precludes his statutory cause of action for wrongful discharge, because he failed to exhaust the available administrative remedies provided by the County's grievance procedures, his action for wrongful discharge and breach of contract was premature. See § 12-902(B). Accordingly, we need not reach the question whether material questions of fact existed as to either claim that might have precluded summary judgment. See Ariz. R. Civ. P. 56(c).

Defamation Claim

¶23 Mullenaux advances a multitude of theories in support of his argument that the trial court erred by granting the County summary judgment on his defamation claim. We do not reach Mullenaux's contentions, however, because he consented to the County's release of Muell's report.

¶24 Consent is a complete defense to defamation. See Restatement (Second) of Torts § 583 (1977); Glaze v. Marcus, 151 Ariz. 538, 729 P.2d 342 (App. 1986). Mullenaux does not deny that, before it disclosed Muell's report to King, the County notified Mullenaux of King's

13

public records request and offered Mullenaux an opportunity to object to the release of the report. The only evidence in the record on this issue establishes that Mullenaux consented to the release. Mullenaux points to nothing suggesting that he objected to the release. Accordingly, we find no disputed issue of fact on whether the County is protected by the consent defense. In light of this conclusion, we need not decide whether any asserted privilege would also provide the County a defense. See Gen. Elec. Capital Corp. v. Osterkamp, 172 Ariz. 191, 836 P.2d 404 (App. 1992) (appellate court affirms trial court judgment if it can be sustained on any theory). The trial court did not err by granting summary judgment in favor of the County on Mullenaux's defamation claim.

## Conclusion

¶25      We affirm the trial court's order granting summary judgment in favor of the County on all of Mullenaux's claims.


_____
J. WILLIAM BRAMMER, JR., Presiding Judge

CONCURRING:


_____
M. JAN FLÓREZ, Judge


_____
JOSEPH W. HOWARD, Judge

14