925 P.2d 731

**Harry J. HAMILTON and Ann L. Hamilton, husband and wife; Violet M. Lacy; Mary Williams; Edmund Kocian and Edith Kocian, husband and wife, Plaintiffs–Appellees Cross–Appellants,**

v.

**The STATE of Arizona, a body politic; the Arizona Department of Revenue; Paul Waddell, Director of the Department of Revenue, Defendants–Appellants Cross–Appellees.**

**No. 1 CA–TX 94–0011.**

Court of Appeals of Arizona,
Division 1,
Department T.

April 23, 1996.

Review Denied Oct. 21, 1996.

James H. Colter, Phoenix, for Plaintiffs–Appellees Cross–Appellants.

Grant Woods, Attorney General by Gail H. Boyd, Assistant Attorney General, Phoenix, for Defendants–Appellants Cross–Appellees.

## OPINION

LANKFORD, Judge.

The taxpayers filed this action for payment of unfiled claims, and retroactive increases in previously filed claims, for certain property tax credits ("PTC"). The Arizona Department of Revenue ("DOR") appeals from summary judgment in favor of the taxpayers.

The taxpayers cross-appeal, challenging limitations the tax court placed on the relief it awarded.

■ We have jurisdiction pursuant to Ariz. Rev.Stat.Ann. ("A.R.S.") section 12–2101(B) (1994). We review the tax court's summary judgment de novo. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

We hold that the tax court should have dismissed the taxpayers' action for failure to exhaust statutory administrative remedies. We also conclude that the tax court erred in holding that PTC credits or payments should have been calculated using "Arizona adjusted gross income" as defined by A.R.S. section 43–1001(1) (Supp.1995). We therefore reverse the tax court's entry of summary judgment in favor of the taxpayers and direct the entry of summary judgment in favor of DOR.

We begin by outlining the relevant provisions of the property tax credit provision involved here, A.R.S. section 43–1072. That statute provides in part:

A. There shall be allowed to each resident a credit against the taxes imposed by this title for a taxable year for property taxes accrued or rent, or both, paid in that taxable year, in accordance with subsection B of this section, if all of the following apply:

1. Such resident attained the age of sixty-five years prior to or during the taxable year or such resident is a recipient of public monies under title 16 of the social security act as amended.

2. Such person paid either property taxes or rent during the taxable year.

3. Such person either:

(a) Did not live with his spouse or any other persons and had an income from all sources in the taxable year of less than three thousand seven hundred fifty-one dollars.

(b) Lived with his spouse or one or more persons and the combined income from all

sources in the taxable year of all persons residing in the residence was less than five thousand five hundred one dollars.

Subsection B allows a sliding scale of credits as much as $502 for persons living alone and having "household income" between $0 and $1750 per year, down to as low as $56 for those whose household income is between $3,651 and $3,750. For persons not living alone, different household income limits apply.

Subsection D provides for a set-off of the allowable credits. The credits are to be set off against income taxes otherwise due on the claimant's income for the year; against any other debts owed by the claimant to the state or any of its agencies pursuant to A.R.S. section 42–133; and against any such liability of the claimant's spouse who was a member of the claimant's household in the taxable year. The balance, if any, "shall be paid in the same manner as a refund granted under chapter 6, article 1 of this title [A.R.S. § 43–601 *et seq.*,[1] governing income tax refunds]." A.R.S. § 43–1072(D)(1) (Supp.1995). Subsection E provides that the DOR "shall make available suitable forms with instructions for claimants." A.R.S. § 43–1072(E) (Supp. 1995).

Of central concern is the definition of "income" contained in the statute. The definition includes several components of income, but we are particularly concerned with that part of the definition that includes "[a]djusted gross income as defined by the department." A.R.S. § 43–1072(H)(6)(a) (Supp. 1995). The crux of the taxpayers' argument is that because DOR failed to define the term "adjusted gross income," the concept of "Arizona adjusted gross income"[2] should have been used in calculating the credits. As part of this argument, taxpayers claim that DOR adopted an inappropriate method of calculating adjusted gross income in its Form 140–PTC, the form given to taxpayers to apply

---

1. A.R.S. sections 43–601 *et seq.* were repealed in relevant part. *See* 1985 Ariz.Sess.Laws ch. 366, § 1. These sections were replaced by A.R.S. sections 42–122, 42–124, 42–129 and 42–130. *See* 1985 Ariz.Sess.Laws ch. 366, § 13.

2. A.R.S. § 43–1001(1) (Supp.1995); *see* 1978 Ariz.Sess.Laws ch. 213, § 2 (adopting the definition of Arizona adjusted gross income).

for and calculate the amount of their PTC.[3]

# I.

Before addressing the merits of the taxpayers' claims, we consider DOR's argument that the trial court should have dismissed the taxpayers' complaint because the taxpayers failed to exhaust administrative remedies. We agree with DOR that dismissal was required for failure to exhaust administrative remedies.

■ A party's failure to exhaust administrative remedies deprives the superior court of authority to hear the party's claim. We have stated that

if parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures. If they fail to utilize all their administrative remedies, the superior court lacks jurisdiction to consider their claim.

*Estate of Bohn v. Waddell,* 174 Ariz. 239, 245–46, 848 P.2d 324, 330–31 (App.1992), *cert. denied,* 509 U.S. 906, 113 S.Ct. 3000, 125 L.Ed.2d 693 (1993); *see also Mountain View Pioneer Hosp. v. Employment Sec. Comm'n,* 107 Ariz. 81, 85, 482 P.2d 448, 452 (1971) ("When a party fails to exhaust all his administrative remedies ... the trial court is without jurisdiction to entertain such action.").

■ To determine whether a party is required to exhaust administrative remedies, the courts must determine whether an administrative agency has original jurisdiction over the subject matter. *See Minor v. Cochise County,* 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980) ("The doctrine of exhaustion of administrative remedies applies where a claim is cognizable in the first instance by the administrative agency alone."); *see also Johnson v. Mofford,* 181 Ariz. 301, 304, 890 P.2d 76, 79 (App.1995); *Campbell v. Mountain States Tel. & Tel. Co.,* 120 Ariz. 426, 429, 586 P.2d 987, 990 (App.1978) (noting that the exhaustion rule applies when an administra-

tive agency has original jurisdiction over the subject matter). In determining whether an administrative agency has been granted original jurisdiction, the courts ask whether the agency "is specifically empowered to act by the Legislature." *Minor v. Cochise County,* 125 Ariz. at 172, 608 P.2d at 311. "The exhaustion rule ... is usually applied by virtue of express statutory mandate." *Estate of Bohn v. Waddell,* 174 Ariz. at 246, 848 P.2d at 331 (citing *Campbell v. Mountain States Tel. & Tel. Co.,* 120 Ariz. at 429, 586 P.2d at 990).

■ DOR provides an administrative remedy that the Legislature has mandated. Section 43–1072(D)(1) states that the net amount of a PTC claim "shall be paid in the same manner as a refund granted under chapter 6, article 1 of this title [A.R.S. § 43–601 *et seq.*]." Section 43–1072(D)(1) thus incorporates by reference the statutes that govern the administrative income tax refund process. By invoking the administrative remedies that apply to refunds, this statute requires the taxpayers to submit their claims to DOR before filing an action in tax court.

To apply for a refund, a taxpayer must make a written claim stating the specific grounds on which the claim is founded. A.R.S. § 42–129(D) (Supp.1995). If DOR denies the claim, it must notify the taxpayer of the denial, and the taxpayer may then file a request for a hearing under section 42–122. A.R.S. § 42–130(A) (Supp.1995). If the claim is denied after a hearing, the taxpayer may then seek an administrative appeal with the State Board of Tax Appeals. A.R.S. § 42–124(A) (Supp.1995). Only then, and only if the administrative appeal is unsuccessful, may the taxpayer file an action in superior court for the overpaid tax. A.R.S. § 42–124(B)(2) (Supp.1995).

The taxpayers contend that these are not mandatory procedures because the term "may" in sections 42–122, 42–124 and 42–129 makes them permissive. This Court has con-

---

**3.** It is undisputed that in most cases, and for all tax years since 1978, calculating the credit by using "Arizona adjusted gross income" would have yielded a substantially lower "household income" figure than using DOR's Form 140–PTC. This would have substantially increased both the number of persons in each taxable year with incomes low enough to qualify for the credit and also the amounts of the allowable credits for many who had previously filed PTC claims using Form 140–PTC.

sistently rejected this argument. *See Rosen v. Board of Medical Examiners,* 185 Ariz. 139, 912 P.2d 1368 (App.1995), *review granted,* No. CV–96–0004–PR (Mar. 21, 1996) (citing *Arizona Law Enforcement Merit Sys. v. Dann,* 133 Ariz. 429, 432–33, 652 P.2d 168, 171–72 (App.1982)) ("The use of the word 'may' indicates an option only in the sense that a party may decide not to pursue any further review."); *see also Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987); *Farmers Inv. Co. v. Arizona State Land Dep't,* 136 Ariz. 369, 378, 666 P.2d 469, 478 (App.1982) (holding that use of the term "may" does not indicate that procedural requirements are permissive).

█ The taxpayers also argue that resort to administrative remedies would be futile. It is true that a party is not required to employ administrative procedures that can in no way provide the party the relief sought. *Estate of Bohn v. Waddell,* 174 Ariz. at 248, 848 P.2d at 333. The taxpayers contend that administrative remedies would be futile because DOR has established as its policy that it will not use a different definition of adjusted gross income than the definition used in the Form 140–PTC. This argument does not establish futility. First, prior administrative challenges brought by the taxpayers were successful. Second, even if DOR adheres to the Form 140–PTC method of calculating Arizona adjusted gross income, its position has not been tested before the Board of Tax Appeals, an agency independent of DOR. Because DOR's decision may be reversed by the Board, it cannot be said that the administrative remedies would be futile. *Estate of Bohn v. Waddell,* 174 Ariz. at 250, 848 P.2d at 335.

We conclude that the taxpayers failed to exhaust administrative remedies. By incorporating the administrative refund process into the PTC statute, the Legislature mandated that claims concerning the proper amount of a PTC first be addressed administratively. The taxpayers did not employ their administrative remedies and have not established futility as an exception to the exhaustion requirement. The trial court therefore erred in denying DOR's motion to dismiss.

## II.

█ Although our conclusion that the taxpayers failed to exhaust administrative remedies renders this appeal moot, we nevertheless address the merits of the taxpayers' claims because "the public interest would be served by deciding the questions presented." *State v. Rodriguez,* 153 Ariz. 182, 183–84, 735 P.2d 792, 793–94 (1987). Both taxpayers and the DOR will be assisted by a decision regarding the proper method of calculating the credit.

The taxpayers contend that the statutory phrase "adjusted gross income as defined by the department" imposed on DOR an obligation to define "adjusted gross income" by administrative rule. They argue that the definition implicit in DOR's Forms 140–PTC (and in the 1973 Form 140 from which they were derived) did not comply with this requirement. They conclude that, in the absence of any other definition by statute or regulation, the concept of "Arizona adjusted gross income" should have been used in calculating the credit. While the tax court agreed with the taxpayers' position, we do not.

## A.

█ The taxpayers first argue that although DOR was obligated to promulgate a rule defining the phrase "adjusted gross income," issuing the Form 140–PTC with an implicit definition did not fulfill that obligation.[4] We disagree. DOR may define the

4. Both DOR and the taxpayers assumed that "adjusted gross income" has never been defined under Arizona law. This assumption is incorrect. A definition of the term was adopted in 1954. 1954 Ariz.Sess.Laws ch. 65 § 12(f). The definition appeared as A.R.S. section 43–112(f). *See* A.R.S. § 43–112(f) (1956), *repealed,* 1978 Ariz.Sess.Laws ch. 213 § 1. The former State Tax Commission incorporated the statutory definition in the regulatory code. *See* Ariz.Admin.Code R15–2–112(f)(1) (1975). The statutory and regulatory code definitions of "adjusted gross income" were in effect until 1978, when the Legislature repealed former title 43 and adopted the Arizona Income Tax Act of 1978. 1978 Ariz.Sess.Laws ch. 213.

term through the Form 140–PTC. Even if the implicit definition did not otherwise suffice, the Legislature ratified the definition contained in the Form 140–PTC when it repealed and reenacted the PTC statute.

We reject the taxpayers' contention that, because DOR expressed its interpretation of "adjusted gross income as defined by the department" through Form 140–PTC rather than by a rule promulgated as required by A.R.S. section 41–1003 (1992),[5] DOR's interpretation was void and could not be applied to A.R.S. section 43–1072. Our research has revealed no authority that supports this proposition. The taxpayers cite none.[6] The plain meaning of section 43–1072 allows DOR to define adjusted gross income. It met its obligation by defining the term implicitly in the Form 140–PTC.

▉ Assuming that DOR's implicit definition in the Form 140–PTC was insufficient to meet DOR's obligation to define the term when the PTC statute was initially adopted, we hold that DOR's definition of the term in the Form 140–PTC was ratified by the Legislature. Section 43–1072—the current version of the PTC statute—was adopted in 1978. *See* 1978 Ariz.Sess.Laws ch. 213, § 2.

Its language is virtually identical to former A.R.S. section 43–128.01. *See* 1973 Ariz. Sess.Laws ch. 182, § 15. In 1978, the Legislature repealed former section 43–128.01 and reenacted it as section 43–1072. Both statutes referred to "adjusted gross income" as it was defined by either DOR or the State Tax Commission.

▉ "Where the legislature re-enacts a statute ... after uniform construction by the officers required to act under it, the presumption is that the legislature knew of such construction and adopted it in re-enacting the statute." *Jenney v. Arizona Express, Inc.*, 89 Ariz. 343, 346, 362 P.2d 664, 667 (1961) (citing *Van Veen v. County of Graham*, 13 Ariz. 167, 108 P. 252 (1910)); *see also Mummert v. Thunderbird Lanes, Inc.*, 107 Ariz. 244, 245, 485 P.2d 814, 815 (1971); *Carriage Trade Mgmt. Corp. v. Arizona State Tax Comm'n*, 27 Ariz.App. 584, 585–86, 557 P.2d 183, 184–85 (App.1976) (holding that legislative repeal and reenactment of a statute constitutes presumptive approval of prior interpretations of the statute).

By reenacting the PTC statute in 1978 without changing the reference to "adjusted gross income" as defined by the department

---

As it developed, the first agency to implement the 1973 PTC statute was not the former State Tax Commission, but rather the new Department of Revenue. *See* 1973 Ariz.Sess.Laws ch. 123, §§ 18, 145 (creating the Department of Revenue). Perhaps due to lack of awareness of the definition in the former statute and rule, DOR's first Form 140–PTC (1974) did not fully track the existing definition of "adjusted gross income." The form appears instead to have used "gross income" generally as defined by former A.R.S. section 43–112(a) and (b), but without adjustments contemplated by the definition of "adjusted gross income."

The parties apparently did not discover the statute and rule defining "adjusted gross income." They therefore did not address the effect of the deviation between the statutory definition of adjusted gross income and the implicit definition contained in the Form 140–PTC. We do not believe that the deviation has any impact on the outcome of this case. Assuming that DOR was obligated to follow the definition contained in the statute and rule, the Legislature adopted DOR's definition of adjusted gross income when it repealed and reenacted the PTC statute in 1978 and repealed the legislative definition of "adjusted gross income." *See infra* (holding that the Legislature ratified the definition contained in the Form 140–PTC when it repealed and reen-

acted the PTC statute without mandating that DOR use a different definition of "adjusted gross income").

5. A.R.S. section 41–1003 provides that "[e]ach agency shall adopt rules of practice setting forth the nature and requirements of all formal procedures available to the public." This statute plainly requires only that administrative procedures be established. It does not require that the definition of "adjusted gross income" be promulgated in the administrative code when the term is effectively defined in the tax forms available to the public.

6. The cases on which the taxpayers rely are inapposite. These decisions indicate only that the Legislature may through appropriately definite language authorize administrative bodies to promulgate regulations that supplement legislation, *State Compensation Fund v. De La Fuente*, 18 Ariz.App. 246, 251–52, 501 P.2d 422, 427–28 (App.1972); *DeHart v. Cotts*, 99 Ariz. 350, 351–52, 409 P.2d 50, 50–51 (1965), and that the scope of the administrative body's authority to regulate may be expressly stated or implied from the statutory scheme. *Longbridge Inv. Co. v. Moore*, 23 Ariz.App. 353, 356, 533 P.2d 564, 567 (App. 1975).

or commission, the Legislature is presumed to have adopted DOR's definition of adjusted gross income as it was contained in the Form 140–PTC. The existing method of computing adjusted gross income contained in the Form 140–PTC has remained essentially unchanged since 1974, when the former PTC statute became effective. The only changes in the calculation followed changes in the overall income formula mandated by amendments to the PTC statute. The Legislature ratified DOR's method of calculating adjusted gross income when it reenacted the PTC statute.

### B.

■ The presumption that in reenacting the PTC statute the Legislature intended to adopt the Form 140–PTC definition of "adjusted gross income" is not defeated by the Legislature's adoption of a definition of "Arizona adjusted gross income." The definition of "Arizona adjusted gross income" was not intended to apply to the PTC statute.

At the same time it reenacted the PTC statute as section 43–1702, the Legislature defined the new concepts of "Arizona gross income" and "Arizona adjusted gross income." A.R.S. § 43–1001(1)–(2) (Supp.1995). It tied Arizona's income tax system to that of the federal government by using an individual taxpayer's federal adjusted gross income as defined by the Internal Revenue Code as "Arizona gross income." "Arizona adjusted gross income" was defined as Arizona gross income modified by more than twenty additions specified by A.R.S. section 43–1021, and by nearly thirty subtractions specified by A.R.S. section 43–1022. A.R.S. § 43–1001(1) (Supp.1995).

Though the Legislature adopted the phrase "Arizona adjusted gross income" in 1978, it nevertheless reenacted former A.R.S. section 43–128.01 as A.R.S. section 43–1072 using the quite different phrase "adjusted gross income as defined by the department." By 1978 that phrase had acquired the consistent, settled interpretation reflected in DOR's Forms 140–PTC. Given that the Legislature chose not to require the PTC credit to be calculated by reference to "Arizona adjusted gross income," and instead maintained the reference to "adjusted gross income," we do not believe the Legislature intended that the PTC credit be calculated with reference to "Arizona adjusted gross income."

Moreover, introducing the new "Arizona adjusted gross income" into the calculus would have been incongruant with the legislative goals of the PTC. Through amendment, many of the former elements of income contained in A.R.S. section 43–128.01(h)(6) (1973) had been excluded from "income" as calculated by A.R.S. section 43–128.01(h)(6) (1978) and A.R.S. section 43–1072(h)(6) (1978). These excluded elements were cash public assistance and relief, railroad retirement benefits, federal social security payments, veterans disability pensions, workers' compensation payments, and "loss of time" insurance payments. All these effective reductions in "income" for PTC credit purposes were items of income that would generally be viewed as received by persons deserving special assistance.

In contrast, "Arizona adjusted gross income" reflected primarily reductions from gross income that had nothing to do with the economically remedial thrust of A.R.S. section 43–1072. For example, A.R.S. section 43–1022 requires the following to be subtracted in calculating "Arizona adjusted gross income":

• a beneficiary's share of trust or estate income recognized pursuant to the Internal Revenue Code;

• interest income received on obligations of the United States, less any interest on indebtedness, or other related expenses, deducted in arriving at Arizona gross income, which were incurred or continued to purchase or carry such obligations; and

• the excess of a partner's share of income required to be included under section 702(a)(8) of the Internal Revenue Code over the income required to be included under chapter 14, article 2 of this title.

A.R.S. § 43–1022(3), (6) & (9) (Supp.1995). Other reductions clearly unrelated to the purposes of A.R.S. section 43–1072 include:

• the amount allowed by section 43–1024 for amortization, by a qualified defense

contractor certified by the department of commerce under section 41–1508, of a capital investment for private commercial activities;

• the amount allowed by section 43–1025 for contributions during the taxable year of agricultural crops to charitable organizations; and

• the amount authorized by section 43–1026 for the taxable year for purchases of, and equipment relating to, alternative fuel vehicles.

A.R.S. § 43–1022(12), (14) & (20) (Supp. 1995). Because the definition of "Arizona adjusted gross income" contains elements entirely unrelated to the purpose of the PTC statute, we do not believe the Legislature intended that the PTC be calculated using "Arizona adjusted gross income."

We conclude that there is no justification for the view that the Legislature intended PTC credits under A.R.S. section 43–1072 to be calculated with reference to "Arizona adjusted gross income" as defined by A.R.S. section 43–1001(1). The tax court therefore erred in holding that the PTC credit provided by A.R.S. section 43–1072 was to be calculated by reference to "Arizona adjusted gross income" as defined by A.R.S. section 43–1001(1).

### Conclusion

The tax court erred in denying DOR's motion to dismiss the taxpayers' complaint for their failure to exhaust administrative remedies. The tax court also erred in holding that DOR used an improper definition of adjusted gross income in its Form 140–PTC. The judgment is reversed with directions to enter judgment for DOR. The tax court's award of attorneys' fees and expert witness fees in favor of the taxpayers was predicated on their status as prevailing parties below. Those awards therefore are also reversed.

FIDEL, P.J., and SULT, J., concur.