995 P.2d 691

Robert J. and Reyes E. McNUTT; Scott L. and Marion C. Shive; Donald V. and Edna D. Howerth; John J. O'Connell; Wallace J. (D) and Betty N. Maddock; Howard V. and Lois McDonald; Edward B. and Arloa Waldmann; Joseph E. and Carmen V. Powell; George W. (D) and Chrstal L. Wilder; James A. and Sylvi R. Smith; J.W. Volner; Helen H. Daley, individually and as class representatives of the class of retired federal employees who paid Arizona income taxes which were unlawfully exacted on their federal pensions during the years 1984 through 1988 and with respect to whom the Department of Revenue is refusing, has refused, or will in the future refuse, to pay refunds due to an alleged failure of the taxpayer to make a timely claim for refund, and their respective estates, heirs, personal representatives, or other legal successors, Plaintiffs–Appellants,

v.

DEPARTMENT OF REVENUE OF the STATE OF ARIZONA and Harold Scott, Director of the Arizona Department of Revenue, in his official capacity, Defendants–Appellees.

No. 1 CA–TX 97–0024.

Court of Appeals of Arizona, Division 1, Department T.

Sept. 15, 1998.

Review Denied March 22, 2000.

256

Bonn, Luscher, Padden & Wilkins, Chartered by Paul V. Bonn, Randall D. Wilkins, D. Michael Hall, Phoenix and O'Neil, Cannon & Hollman, S.C. by Eugene O. Duffy, Milwaukee, Attorneys for Plaintiffs–Appellants.

Grant Woods, Attorney General by Patrick Irvine, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 Plaintiffs are twenty-one individual Arizona taxpayers and an alleged class. These taxpayers seek to encompass within the class all retired federal employees who paid Arizona income taxes on federal pensions during one or more of tax years 1984 through 1988 and to whom appellee Arizona Department of Revenue ("DOR") refuses or will refuse to refund those amounts on the ground that they failed to make timely administrative refund claims. The tax court held for DOR on the merits and declined to certify a class. We affirm.

## FACTS AND PROCEDURE IN THE TAX COURT

¶ 2 Before it was amended effective January 1, 1989, A.R.S. section 43–1022 [1] exempted the first $2,500 of a retired federal employee's annual pension income from Arizona income taxation. Ariz.Rev.Stat. Ann. ("A.R.S.") § 43–1022(4) (1980). At the same time, A.R.S. section 43–1022(3) afforded better treatment to retired employees of an Arizona governmental entity by granting them an unlimited exemption for their related retirement income. On March 28, 1989, the United States Supreme Court held that a similar disparity in the State of Michigan's income tax statutes violated the constitutional doctrine of intergovernmental tax immunity codified in 4 U.S.C. § 111. *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

¶ 3 By April 3, 1989, DOR had briefed then-Governor Rose Mofford on the potential effect of *Davis*. The briefing included an estimate of the total Arizona income taxes that retired federal employees had overpaid from and including tax year 1984 and the annual impact that exempting federal retirement benefits from Arizona income taxation

would have on income tax collections in the future.[2]

¶ 4 On April 3, 1989, DOR had issued a press release that stated in part:

"We have requested a review of this case by the Attorney General's Office in terms of its retroactive application", said Paul Waddell, Director. "Ultimately, the issue of refunds will most likely be settled in the court system". Taxpayers wishing to protect any potential rights to refund as a result of this ruling may file an amended return with the Department of Revenue. "However", continued Waddell, "at this time, the department will be taking the position that any refund request resulting from this decision will be denied."

¶ 5 On May 1, 1989, three individual taxpayers brought an action in Maricopa County Superior Court case no. TX 89–00050 (*"Bohn v. Waddell"*) on behalf of themselves and an alleged class consisting of all Arizona residents who received United States government retirement benefits from 1984 through 1988. *See generally Estate of Bohn v. Scott*, 185 Ariz. 284, 286–88, 915 P.2d 1239, 1241–43 (App.1996). The action sought, among other relief, a declaration that A.R.S. sections 43–1022(2) and –1022(4) were unconstitutional and damages against the then-current and former directors of DOR personally. *See id.* The plaintiffs later amended their complaint to add a claim to recover the disputed taxes from DOR.

¶ 6 On August 7, 1989, DOR began sending a standard form letter in response to taxpayer inquiries about the impact of *Davis v. Michigan*. The letter explained in part:

With respect to Arizona, it is not clear what will be the effect of this Supreme Court decision. Similar decisions with great revenue impact on the people of a state have been applied prospectively by the courts and refunds have not been required. However, the *Davis* decision may be applied retroactively by the courts and a refund may be required. Our present position is that any refund request result-

---

1. *See* 1989 Ariz. Sess. Laws Ch. 312, §§ 12, 25.

2. DOR acknowledges that, by April 17, 1989, it had sufficient information from which it could calculate the maximum amount that federal retirees could seek under *Davis v. Michigan* for tax years 1984 through 1988.

ing from the U.S. Supreme Court case will be denied until the issue of refunds is resolved by the administrative hearing process, including the State Board of Tax Appeals, and the courts. . . .

Generally, refund claims must be filed within four years after the return was required to be filed. A valid extension in the original tax year extends the time for filing a refund claim by the period of the extension. For example, if a taxpayer had no extension for the tax year 1984, the due date was April 15, 1985 and the four year period expired on April 17, 1989. However, if the taxpayer filed later than April 15, 1985, the period for filing a refund claim does not expire until four years after the return was actually filed.

You may file a "protective claim for refund" by filing an Arizona Form 140X before your limitation period expires. You should mark clearly at the top on the front of the form that it is a protective claim. Include an explanation that it is being filed based on the *Davis v. Michigan Department of Treasury* Court case, and send it "Attention: Income Tax Audit Section". With respect to filing amended returns to claim refunds for the tax years which are still within the statute of limitations (1985, 1986, 1987, 1988), you may wish to wait until additional information becomes available.

¶ 7 In *Bohn v. Waddell,* the tax court ruled that *Davis* encompassed military as well as federal civil service retirement benefits and applied retroactively. *See Bohn,* 164 Ariz. 74, 80, 790 P.2d 772, 778 (Tax 1990). It further ruled that affected taxpayers would be entitled to refunds measured by "[t]he difference between the tax federal pensioners paid on their pensions and what they would have paid had taxpayers been similar[ly] taxed." *Id.* at 94, 790 P.2d at 792. It

held that no class would be certified provided that DOR could devise an administrative plan to pay refunds as the tax court ordered. *See id.* at 80, 790 P.2d at 778. Finally, it denied DOR's motion to dismiss the action on the theory that no taxpayer had resorted to and exhausted statutory administrative remedies. *See id.*

¶ 8 On April 11, 1990, counsel for the plaintiffs in *Bohn v. Waddell* presented a new administrative refund claim in the form of a letter to counsel for DOR. The letter expressed the plaintiffs' "continuing objection to the Department of Revenue's lack of subject matter jurisdiction to address any and/or all of the matters at issue in this case with respect to the named plaintiffs, our other clients . . ., and the class whom our clients continue to seek to represent. . . ." The letter stated:

> With the above in mind, we again respectfully note that our named plaintiffs have previously filed timely protective claims for refund on behalf of themselves and the class which they continue to seek to represent.[3] We now amend these protective claims for the purpose of specifically identifying certain members of the putative class as identified in the who [sic] individually have engaged us for the purpose of representing their interests and claims in this matter. On behalf of the clients identified in the attachment, we hereby advise you that they affirmatively ratify, adopt and incorporate each of the claims previously advanced on their behalf by the named plaintiffs in the *Bohn v. Waddell* litigation as their own. By way of illustration and not limitation, these claims include all documents and matters of record advanced on behalf of the named plaintiffs in the Bohn litigation as well as all communications by us to you directly or

---

**3.** Plaintiffs in this case do not call to our attention the location in the record where copies of the "protective claims" filed by the three *Bohn v. Waddell* plaintiffs might appear, or cite us to any point in the record in which the taxpayers asked the tax court to take judicial notice of these documents in the court's file in any other case. Our review of the record similarly reveals neither copies of these documents nor references to them by the taxpayers. As to the plaintiffs in the

instant case, who sought to base their individual refund claims on their membership in a class for whom a separate claim had been filed, the State Board of Tax Appeals appears to have treated the letter of April 11, 1990, as the only "class claim" to which their contentions related. Similarly, in the tax court and on appeal plaintiffs appear to have relied solely on the correspondence by their counsel dated April 11, 1990, as constituting their "administrative class claim."

indirectly related thereto or in response to matters raised by your office on behalf of the Defendants.

Appended to this letter was an eighty-four page list of some 5,000 individuals' names.

¶ 9 By letter of April 18, 1989, DOR responded in part:

To the extent you have attempted to certify a class, and to the extent potential class members have made a timely claim with the Department, it would appear that your record and their interests are protected. Your reference to Amendment of Protective Claims is confusing. Is your letter attempting to somehow amend the protective claims filed by named Plaintiffs with the Department to include persons who have not filed claims? In our opinion such a submission would be legally insufficient to toll the statute of limitations and protect taxpayers who have not filed timely protective claims.

¶ 10 On March 7, 1991, the tax court issued a supplemental opinion in *Bohn v. Waddell* and simultaneously entered a final judgment. *See* 167 Ariz. 344, 807 P.2d 1 (Tax 1991). The plaintiffs appealed and, on September 29, 1992, we issued our opinion resolving that appeal. *See Estate of Bohn v. Waddell,* 174 Ariz. 239, 848 P.2d 324 (App. 1992). We ruled that the tax court should have dismissed the plaintiff-taxpayers' claims for lack of subject-matter jurisdiction because they did not exhaust their administrative remedies before bringing the action. We expressly declined to consider whether the tax court's refund formula was correct. We vacated the tax court's opinions and remanded.

¶ 11 On June 18, 1993, the United States Supreme Court held that *Davis* was to be applied retroactively. *Harper v. Virginia,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). On July 23, 1993, then-DOR director Harold Scott issued Arizona Individual Income Tax Ruling ITR 93–15. After summarizing the Arizona statutes and federal and state case law, ITR 93–15 directed in part:

For purposes of A.R.S. § 42–129, the department determines that taxpayers who were taxed on retirement benefits received from the United States government paid tax in excess of the amount actually due.

. . . .

As authorized by A.R.S. §§ 42–129 and 42–115, the department will issue credit vouchers to those federal retirees who paid excess tax and who filed timely amended returns, refund claims, or protective claims. These credit vouchers may be used to offset a taxpayer's Arizona income tax liability for tax year 1993. To the extent the amount of the credit voucher exceeds the 1993 tax liability, the credit shall be nonrefundable, but may be used to offset the liability of later years. . . .

In calculating the amount of excess taxes, consideration will be given to other items on the return which are affected by the classification of federal retirement benefits income as exempt from state taxation. For example, under A.R.S. § 43–961.5, the subtraction for federal income taxes paid is only allowed to the extent the federal taxes are paid on income taxed by the state. Therefore, the federal income tax subtraction may be reduced to the extent Arizona income is less because the federal retirement benefits are not taxable by the state.

Taxpayers who are entitled to relief shall be those who filed timely amended returns, claims for refunds, or the protective claims for refund included in the instructions to the 1989 income tax return relating to tax years 1984 through 1988. Any taxpayer who failed to file such a timely claim is not entitled to relief.

. . . .

Any credit vouchers remaining outstanding after tax year 1996 will be refundable. At that time, the department will authorize a refund pursuant to A.R.S. § 42–129 for the outstanding credit balance.

¶ 12 In implementing ITR 93–15, DOR accepted letters or documents from taxpayers that did not refer to any particular tax year as protective refund claims for all years open under A.R.S. sections 42–113, 42–115, and 42–129. But DOR declined to treat Arizona amended returns filed specifically for tax year 1984 as valid refund claims for any other tax year.

¶ 13 Of the named plaintiffs in this case, McNutt, Howerth, Schive, McDonald, Powell, Wilder, and Volner filed Arizona amended returns for 1984 and received refunds for that year. Daley additionally filed amended returns for 1985 and 1986 and received refunds for those years. Daley and her husband filed separate returns for tax years 1987 and 1988: she filed no protective claim for those years, while her husband, who did, received refunds for those years. Howerth filed a refund claim in 1991. DOR accepted the claim as timely for tax years 1986 through 1988 and paid refunds for those years. Maddock filed a protective refund claim for tax years 1985 through 1988 and received refunds for those years. O'Connell filed nothing for any of tax years 1984 through 1988 and received nothing. Smith and Waldmann filed nothing for 1986 through 1988 and received no refunds for those years.

¶ 14 DOR treated other taxpayers in circumstances like those of the named plaintiffs in the same way. For the majority of federal retirees who DOR found had submitted timely refund claims for one or more of the tax years 1984 through 1988, DOR did not require documentary support and computed refunds from its own records. Under ITR 93–15, DOR paid refunds or issued credit vouchers to 40,754 taxpayers. This left in excess of 28,000 federal retirees who, like the plaintiffs, received either no refunds or less than full refunds of the Arizona income taxes they had paid on their federal retirement benefits for tax years 1984 through 1988.

¶ 15 Our opinion in *Estate of Bohn v. Waddell* became final on August 9, 1993, when the United States Supreme Court denied rehearing of its previous refusal to grant certiorari. Shortly thereafter, proceedings on remand commenced in the tax court. The plaintiffs asked the tax court: (1) to declare that the filing of the action had tolled the limitations period for tax refunds for all retired federal employees who had paid Arizona income taxes on their federal pensions during 1984 through 1988; (2) to declare that the refund rights conferred by ITR 93–15 were vested, unmodifiable, and available to all such retirees without regard to their filing of amended returns, refund claims, or protective refund claims; (3) to direct DOR to give notice to all retired federal employees who had paid Arizona income taxes on their federal pensions during 1984 through 1988, or their successors in interest, concerning these rights under ITR 93–15; and (4) to certify a class of all retired federal employees who received federal pensions in Arizona during 1984 through 1988, regardless whether they had filed amended returns, refund claims, or protective refund claims.

¶ 16 The tax court declined to grant any of the relief requested. Instead, it entered judgment on our mandate, dismissing the taxpayers' complaint for lack of subject-matter jurisdiction on the ground that they had failed to exhaust their administrative remedies. The taxpayers in that action appealed to this court.

¶ 17 Meanwhile, each of the plaintiffs protested DOR's decisions to limit their refunds to those tax years for which he or she had personally filed a timely individual refund claim. All were unsuccessful before DOR's hearing officer. Each appealed to the State Board of Tax Appeals. All were unsuccessful before the Board. The Board's decision in the McNutts' case contained these passages:

Appellants ... argue that the Board should process their refund claim as part of a written class claim filed with the Department in April 1990. The Department acknowledges that it received a written refund claim identifying nearly 5,000 retirees and has been processing refunds accordingly—but only to those individuals specifically identified in the claim. Appellants were not among those specifically identified.

The Department has not processed Appellants' refund claim as a class action, and this Board cannot create such a class. Arizona administrative bodies have only the power specifically granted them by statute. *Boyce v. City of Scottsdale,* 157 Ariz. 265, 756 P.2d 934 (App.1988). As part of the administrative process, the Board is authorized to consider appeals filed by any "person aggrieved by a final decision or order of the department." A.R.S. § 42–124.A. Nothing in the statute

authorizes the Board to certify a class or apply the doctrine of virtual representation. Neither do the Board's rules provide for such a procedure. *See* A.A.C. R16-3-101 through R16-3-122.

Seven of the nine Board decisions in the remaining taxpayers' appeals contained this same language, with this sentence appended: "In addition, the rule of confidentiality in regard to tax returns vitiates [sic] against any such construction. A.R.S. § 42-108."

¶ 18 Beginning with McNutt in September 1995, the plaintiffs brought the five tax court actions that are before us in this appeal. They were consolidated in June 1996. Invoking A.R.S. section 42-124, the Fourteenth Amendment to the United States Constitution, and the extraordinary legal remedy of mandamus, the plaintiffs all sought, among other relief, refunds for themselves and a class comprising

> all recipients of federal pensions (and their respective estates, heirs, personal representatives, or other legal successors) who paid Arizona income taxes unlawfully exacted on their federal pensions during any of the years 1984 through 1988 and with respect to whom the Department of Revenue is refusing, has refused, or will in the future refuse, to pay refunds *due to an alleged failure of the retired federal employee to make a timely claim for refund* for any of the years 1984 through 1988. . . .

The requested refunds were to include "all Arizona income taxes which Class members, and each of them, paid during the years 1984 through 1988 with respect to their federal pensions and which the DOR has . . . refused or is threatening to refuse to pay based upon the Class member's alleged failure to make a timely claim for refund. . . ."

¶ 19 In April 1996, as plaintiffs were in the process of filing and prosecuting the actions now before us on appeal, we affirmed the substance of the judgment on our mandate in *Estate of Bohn v. Waddell. Estate of Bohn v. Scott*, 185 Ariz. 284, 915 P.2d 1239 (App.1996).[4] We stated in pertinent part:

[T]he taxpayers contend that the tax court's judgment on mandate violated the due process rights of retired federal employees by eliminating final notice and tolling relief and thereby "retroactively reinstat[ing] a statute of limitations bar *ex post facto* as to 30,000 retirees in the virtually represented class." Again we disagree. It is fair to note at first that the "notice and tolling relief" contained in the tax court's first judgment never became final. It was reversed. The tax court's recognition of this fact on remand therefore did not retroactively "reinstate" anything.

More importantly, the only retired federal employees whose interests may have been set back by the judgment on remand were those who, unlike any of the taxpayer-appellants, had failed to file timely amended returns or protective refund claims for one or more of the years in question. Having yet failed to exhaust their administrative remedies as required by *Estate of Bohn*, none of those federal retirees were before the tax court on remand. The central analytical mistake that the taxpayer-appellants make in this appeal is in imputing to the Arizona scheme for administrative and judicial relief for individual income taxpayers the uncertainty they have encountered in pursuing the class relief on which they set their sights in the beginning. There is no constitutional lack of clarity or certainty in the post deprivation relief available to the appellant taxpayers and those like them who have made timely individual refund claims.

Even if claims of untimely filers of administrative refund claims had properly been before the tax court, the tax court would have committed no constitutional error in refusing to grant further relief. In *McKesson [Corp. v. Division of Alcoholic Beverages and Tobacco, Department of Business Regulation of Florida* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) ] the Supreme Court stated:

> A State's freedom to impose various procedural requirements on actions for postdeprivation relief sufficiently meets

---

4. We reversed only to the extent the tax court had awarded attorney's fees against the individu-

al plaintiffs under 42 U.S.C. § 1988.

this concern [over ability to engage in sound fiscal planning] with respect to future cases. **The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint; ... [and] enforce relatively short statutes of limitations applicable to such actions....** The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax.

496 U.S. at 45, 110 S.Ct. at 2254. (Emphasis added.) *McKesson* is thus fundamentally inconsistent with the taxpayers' implicit contention that a state's postdeprivation remedy for unconstitutional taxation is not "clear and certain" unless it permits the bypassing of state procedural requirements by way of class action proceedings. For that reason, there was no basis for the taxpayers' claim, even if properly before the tax court, that due process required notice to all federal retirees who paid Arizona income taxes in 1984–88 or for tolling of the time for filing administrative refund claims as of the commencement of this litigation.

185 Ariz. at 292–93, 915 P.2d at 1248–49.

¶ 20   On April 29, 1997, ruling in the instant litigation on cross-motions for summary judgment and a motion for class certification, the tax court declined to certify a class and held for DOR on the merits. Plaintiffs filed a timely joint notice of appeal from the formal judgment. We have appellate jurisdiction. *See* A.R.S. § 12–2101(B).

### ISSUES

¶ 21   The taxpayers raise the following issues:

1.   whether A.R.S. section 42–129(A) or other Arizona law imposes an obligation on DOR to refund taxes it "knows" have been overpaid, regardless whether a refund claim has been presented;

2.   whether DOR's calculation from its own records of the state's potential exposure to refund liability as a result of the United States Supreme Court's decision in *Davis,* satisfied any applicable refund claim requirement;

3.   whether a provision of the Arizona Tax Court's judgment in case no. TX 89–00050, vacated in *Estate of Bohn v. Waddell,* 174 Ariz. 239, 848 P.2d 324 (App. 1992), tolled any statutory limitations period on refund claims that would otherwise be applicable in this case;

4.   whether an administrative class claim that counsel for the taxpayers in *Estate of Bohn v. Waddell* filed with DOR's counsel on April 11, 1990, functioned as a timely refund claim for tax years 1985 through 1988 for the individual taxpayers and the alleged class in this case;

5.   whether taxpayers who presented individual amended returns for one or more years between 1984 and 1988 thereby made refund claims effective for all those years; and

6.   whether the tax court abused its discretion in denying the taxpayers' motion for class certification.

### DISCUSSION

*A.   Refunding of Known Overpayments Independent of Refund Claims*

■ ¶ 22   We first consider whether, under the circumstances of this case, A.R.S. section 42–129(A) required DOR to refund income taxes that it collected on federal retirees' pension benefits from 1984 through 1988 regardless whether any refund claims were filed. Plaintiffs argue that A.R.S. section 42–129(A) imposes an obligation on DOR to refund taxes that it "knows" are overpaid. We disagree.

■ ¶ 23   At all material times, A.R.S. section 42–129(A) provided:

If the department determines that any amount of tax, penalty or interest has been paid in excess of the amount actually due, the department shall credit the excess amount against any tax administered pursuant to this article, including any penalty or interest owed by the taxpayer. If it is

determined that the amount cannot be credited against a tax or installment of taxes due from the taxpayer, the department may issue to the taxpayer a credit voucher for any balance of such excess....

Courts determine legislative intent first by assigning to the statute's language its natural meaning and construing it in the context of other related statutes. *Fisher v. Maricopa County Stadium Dist.*, 185 Ariz. 116, 123, 912 P.2d 1345, 1352 (App.1995). Viewed in this light, A.R.S. section 42–129(A) does not support plaintiffs' argument.

¶ 24 DOR's obligation to provide a refund or credit under A.R.S. section 42–129(A) arises when it "determines" that an overpayment of taxes has been made.[5] Contrary to plaintiffs' suggestion, an administrative agency does not necessarily "determine" a mixed question of law and fact of that kind just because it has "substantial reason" to make that determination in a particular way. "Substantial reason" sometimes supports both sides of an issue, as was the case here.

¶ 25 The United States Supreme Court explicitly avoided deciding whether *Davis* should be applied retroactively; further, the Court's precedent did not conclusively establish whether *Davis* should be retroactively applied. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (three-factor test for nonretroactivity); *American Trucking Ass'n v. Smith*, 496 U.S. 167, 178–79, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (split opinions on applicability of *Chevron* to civil cases). It was only on the issuance of the United States Supreme Court's opinion in *Harper* in June 1993, over a strong and lengthy dissent by Justice O'Connor joined by Chief Justice Rehnquist, that *Davis's* retroactivity was conclusively established.

¶ 26 Against that background, DOR did not and could not have determined that the disputed tax payments were "overpayments" under A.R.S. section 42–129(A) before June 18, 1993, the day the Supreme Court issued the *Harper* decision. Accordingly, even assuming that DOR has statutory authority to make refunds and credits absent the filing of refund claims,[6] it did not have the legal duty to do so before *Harper*.

¶ 27 Any claims for refund must be made within four years after the return is filed or is required to be filed, whichever is later. *See* A.R.S. section 42–115(A). Because *Harper* was decided more than four years after April 17, 1989, the due date for Arizona income tax returns for 1988, A.R.S. section 42–115(A) precluded DOR from issuing refunds or credits for that or any previous tax year.

¶ 28 Plaintiffs nevertheless argue that other legal principles independently require DOR to refund the disputed taxes to all affected taxpayers for at least 1988. Citing *Neumann Caribbean Int'l, Ltd. v. Arizona Dep't of Revenue*, 156 Ariz. 581, 754 P.2d 308 (App.1987), *rev'd, Pittsburgh & Midway Coal Mining Co. v. Arizona Dep't of Revenue*, 161 Ariz. 135, 140, 776 P.2d 1061, 1066 (1989), they assert that DOR's "settled practice" is to refund taxes collected after a judicial declaration of invalidity, regardless whether a refund claim was filed by the taxpayer. We, however, find no support for that proposition in *Neumann Caribbean*, which had nothing to do with the filing or non-filing of refund claims.

¶ 29 In that case, the taxpayer had paid taxes before new case law held those taxes illegal. The issue on appeal was whether DOR could properly deny the taxpayer a refund on the ground that it had failed to make its original payments under protest.

---

5. The question whether federal retirees' Arizona income tax payments attributable to their federal pensions received from 1984 through 1988 constituted overpayments depended on whether the holding in *Davis* applied retroactively to those years. If it did not, those taxes were lawfully collected; if it did, they were not.

6. A.R.S. section 42–115 provides in part:

A. The period within which a claim for credit or refund may be filed, **or a credit or refund allowed or made if no claim is filed,** is the period within which the department may make an assessment under § 42–113.

(Emphasis added.) We assume without deciding that the emphasized language gives DOR discretionary authority to issue a credit or refund regardless of the taxpayer's failure to present a claim requesting one.

Following earlier Arizona case law, *Neumann Caribbean* held that it could.

¶ 30 On review, the supreme court disagreed with *Neumann Caribbean* and the cases it followed. *See Pittsburgh & Midway Coal*, 161 Ariz. at 138–39, 776 P.2d at 1064–65. The court held that the statutory requirement of payment under protest did not apply to the initial payment of a tax before grounds for protest had arisen. It only applied as a condition precedent to seeking a refund in the superior court after losing a bid for relief in the administrative process—in other words, after a true dispute had developed.

¶ 31 *Pittsburgh & Midway* also observed that the taxpayer in *Neumann Caribbean* had "exhausted its administrative remedies," *id.* at 136, 776 P.2d at 1062 which would have included filing a timely refund claim. *Neumann Caribbean* accordingly does not support the proposition that DOR follows a settled practice of "refund[ing] taxes collected after a judicial declaration of invalidity, irrespective of whether a refund claim was filed by the taxpayer."

¶ 32 The tax court, therefore, did not err in declining to order DOR to pay refunds in accordance with the alleged "settled practice" of refunding taxes collected after a judicial declaration of invalidity regardless whether taxpayer refund claims were filed.

## B. The Refund Claim Requirement

¶ 33 As previously noted, a taxpayer has four years from the date a return is filed, or is required to be filed, whichever is later, in which to file a refund claim. A.R.S. § 42–115(A) "The failure to begin an action for refund or credit within the time specified in this section is a bar against the recovery of taxes by the taxpayer." *See* A.R.S. § 42–115(C). Plaintiffs assert various reasons that they have met the refund claim requirement. We disagree.

## 1. Informal Claims

¶ 34 Plaintiffs point out that, shortly after *Davis*, DOR possessed information concerning the number of federal retirees who paid Arizona income taxes on federal pensions and the total amount of taxes that would be deemed overpaid if *Davis* were applied retroactively. They contend that this information, together with their own individual refund claims and the "administrative class claim" presented in the April 11, 1990 letter from the *Bohn v. Waddell* plaintiffs' counsel, constituted a valid "informal claim." They further contend that this "informal claim" complied with the refund claim requirement under Arizona law for every federal retiree taxpayer for every year from 1984 through 1988. We hold it did not.

¶ 35 A party's failure to resort to and exhaust administrative remedies deprives the superior court of jurisdiction to hear the party's claim. *See Hamilton v. State*, 186 Ariz. 590, 593, 925 P.2d 731, 734 (App.1996); *Estate of Bohn v. Waddell*, 174 Ariz. at 245–46, 848 P.2d at 330–31. In *Hamilton* we stated:

Section 43–1072(D)(1) [refundable property tax credit] . . . incorporates by reference the statutes that govern the administrative income tax refund process. By invoking the administrative remedies that apply to refunds, this statute requires the taxpayers to submit their claims to DOR before filing an action in tax court.

To apply for a refund, a taxpayer must make a written claim stating the specific grounds on which the claim is founded. A.R.S. § 42–129(D) (Supp.1995). If DOR denies the claim, it must notify the taxpayer of the denial,[7] and the taxpayer may then file a request for a hearing under section 42–122. A.R.S. § 42–130(A) (Supp. 1995) [sic, 1991]. If the claim is denied after a hearing, the taxpayer may then seek an administrative appeal with the State Board of Tax Appeals. A.R.S. § 42–124(A) (Supp.1995). Only then, and only if the administrative appeal is unsuccessful, may the taxpayer file an action in superior

---

7. If DOR fails to notify the taxpayer of a ruling on his or her refund claim within six months after he or she presented it, the taxpayer may treat it as having been denied. A.R.S. § 42–130(B).

court for the overpaid tax. A.R.S. § 42–124(B)(2) (Supp.1995).

*Id.* at 593, 925 P.2d at 734.

¶ 36 Plaintiffs cite several cases for the view that they filed valid informal claims for refunds for all years from 1984 through 1988, but these cases are all federal decisions pertaining to refunds sought under the United States Internal Revenue Code. *See, e.g., Furst v. United States,* 230 Ct.Cl. 375, 678 F.2d 147 (1982); *United States v. Commercial Nat'l Bank,* 874 F.2d 1165 (7th Cir.1989). Internal Revenue Code § 6511 provides time limits for the filing of claims for income tax credits or refunds, but does not define the term "claim." Federal courts have accordingly held that, while there must be written evidence of a claim's existence, the claim itself may take any form, including oral.

■ ¶ 37 This standard is far more relaxed than its Arizona analogue. A.R.S. section 42–129(D) provides in part: "Each claim for refund shall be in writing and shall state the specific grounds on which it is founded." The informal claims allowed in the federal income tax system simply do not suffice under Arizona law. Plaintiffs did not and could not comply with Arizona's refund claim requirement through presenting an "informal claim."

### 2. *Effect of Tolling Provision in First Bohn Judgment*

■ ¶ 38 Notwithstanding, plaintiffs point to the tax court's initial judgment in *Bohn v. Waddell,* which provided:

The Court denies Plaintiffs' Motion for Class Certification with respect to both the First and Second Claims for Relief. The Court orders virtual representation in accordance with its published Opinion of April 6, 1990 and directs the Department of Revenue to treat all persons who paid Arizona income tax on federal pensions for tax years 1984 through 1988 as though each such person were a named Plaintiff on the Complaint herein. **Applications for refunds may be made up until the first April 15th two years after there is a final unappealable decision in this matter or until the expiration of the term**

**provided in A.R.S. § 42–115, whichever is later.** Notice to affected persons shall be in accordance with the Court's published Opinion of April 6, 1990.

(Emphasis added.) Plaintiffs urge us to hold that the tax court in the instant case erred in declining to enforce this tolling provision. They argue that the proposition that federal retirees were not entitled to rely on it conflicts with Arizona public policy and would undermine citizen confidence in the Arizona judiciary. Again, we disagree.

¶ 39 In *Estate of Bohn v. Scott,* we addressed a variant of this argument as follows:

No elaborate analysis is necessary to dispose of the taxpayers' remaining contention that on remand the tax court also erred in failing to effectuate its pre-appeal orders concerning the filing of administrative refund claims and the giving of notice of refund rights to federal retirees. These orders were issued strictly in aid of the tax court's initial decision to order court-supervised tax refunds. In *Estate of Bohn [v. Waddell]* we held that the tax court lacked jurisdiction to enter any such order in view of the taxpayers' failure to resort to and exhaust administrative remedies in their individual or representative capacities.

The tax court correctly viewed the declaratory relief, equitable tolling and taxpayer notice provisions of its 1991 judgment as having been swept away by *Estate of Bohn [v. Waddell].*

185 Ariz. at 291, 915 P.2d at 1246. We reaffirm our holding in *Estate of Bohn v. Scott* that the tolling provision of the original judgment in *Bohn v. Waddell* was, like the remainder of that judgment, legally ineffective from the start.

■ ¶ 40 Moreover, we disagree that the failure to give effect to the provision would be inappropriate and unfair. Plaintiffs have not called to our attention anything in this record tending to establish that the tax court's tolling provision misled any affected federal retiree in such a way that he or she failed to file an administrative refund claim that otherwise would have been filed.

¶ 41 Furthermore, plaintiffs' reliance on *Verrichia v. Commonwealth, Dep't of Revenue*, 162 Pa.Cmwlth. 610, 639 A.2d 957 (1994), *cert. denied*, 514 U.S. 1016, 115 S.Ct. 1358, 131 L.Ed.2d 216 (1995), is misplaced. That case did not hold that the reversal of a class certification required that the statutory limitation period on refund claims be deemed tolled for every member of the putative class. It held only that those taxpayers who filed forms solicited by the notice of class certification should be treated as having filed timely administrative refund claims. *Verrichia*, therefore, does not apply here.

¶ 42 In this case, all those who filed timely refund claims, amended returns, or protective refund claims as suggested by DOR received refunds. On this record, nothing more was required.

### 3. *Effect of April 11, 1990 Letter from Bohn Plaintiffs*

¶ 43 Plaintiffs also contend that the April 11, 1990 letter from counsel for the *Bohn v. Waddell* plaintiffs to DOR constituted a timely and effective administrative class claim that satisfied any Arizona refund claim requirement for tax years 1985 through 1988. Plaintiffs assert that DOR's and the tax court's contrary positions are inconsistent with *Andrew S. Arena, Inc. v. Superior Court*, 163 Ariz. 423, 788 P.2d 1174 (1990). They argue that the claim letter satisfied all three of the purposes cited by *Arena* for the Arizona claims statute, A.R.S. section 12–821. *See id.* at 425, 788 P.2d at 1176. They further contend that, even if the administrative class claim were not effective, its filing tolled the four-year limitations period until at least October 14, 1993, when DOR determined not to honor it as such. We, however, disagree.

¶ 44 The April 1990 claim letter did not assert a "class claim" that encompassed either plaintiffs or the putative class. The letter stated: "[W]e again respectfully note that our named plaintiffs have previously

filed timely protective claims for refund on behalf of themselves and the class which they continue to seek to represent." As we read it, the letter's purpose was to amend those claims to add the names of some 5,000 additional individuals who the *Bohn* plaintiffs' counsel then represented.[8] Further, as we have observed, the record in this case does not contain copies of the *Bohn* plaintiffs' claims. We have no indication that these claims were brought to the tax court's attention in connection with the dispositive motions in the case, and we are accordingly unable to consider their sufficiency as "class claims" for the purpose of this litigation.

¶ 45 We are also unconvinced by plaintiffs' repeated charges that DOR from the beginning misled the members of the putative class about what was required to obtain a refund and that it changed the rules in the middle of the game as soon as *Harper* deprived it of its non-retroactivity defense. Although plaintiffs argue that DOR's initial brief press release on April 6, 1989, was misleading, they have provided no evidence of anyone being misled. Also, aside from that press release, all DOR's post-*Davis* public expressions that are part of this record made quite clear its position that federal retirees who paid Arizona income taxes on federal pensions in the period 1984 through 1988 were required to file timely refund claims for each affected tax year to be eligible for any refunds that the courts might later require it to pay. As we said in an analogous context:

> The central analytical mistake that the taxpayer-appellants make in this appeal is in imputing to the Arizona scheme for administrative and judicial relief for individual income taxpayers the uncertainty they have encountered in pursuing the class relief on which they set their sights in the beginning. There is no constitutional lack of clarity or certainty in the postdeprivation relief available to the appellant tax-

---

8. The letter's key language was this: "We now amend these protective claims for the purpose of specifically identifying certain members of the putative class as identified in the who [sic] individually have engaged us for the purpose of representing their interests and claims in this matter. On behalf of the clients identified in the attachment, we hereby advise you that they affirmatively ratify, adopt and incorporate each of the claims previously advanced on their behalf by the named plaintiffs in the *Bohn v. Waddell* litigation as their own."

payers and those like them who have made timely individual refund claims.

*Estate of Bohn v. Scott,* 185 Ariz. at 293, 915 P.2d at 1248.

The tax court, therefore, did not err in refusing to give effect to the April 1990 letter as an "administrative class claim."

## C. *Individual Taxpayers' Arizona Amended Returns for 1984*

¶ 46 Plaintiffs next argue that those federal retirees who in 1989 filed Arizona amended returns for tax year 1984 supplied all the information necessary for a valid refund claim for all open years—their names and the bases for their claims. They observe that DOR accepted letters and other documents that did not refer to any particular tax year as timely protective refund claims for all open years. Plaintiffs also observe that DOR promulgated no regulations or other guidance on the required content for a refund claim. They urge that, by refusing to accept amended returns for tax year 1984 as claims for refunds for all open years, DOR arbitrarily imposed on the filing taxpayers an artificial condition it did not impose on others.

¶ 47 The record contains affidavits from the affected taxpayers. Taxpayer Robert McNutt filed an affidavit, which is representative of the other affidavits, and stated: (1) that he knew the tax on federal pension benefits was illegal for years 1984 through 1988, (2) that his accountant informed him that only one claim was necessary, (3) that DOR did not notify him of any action until ITR 93–15, (4) that at that point DOR would not recognize his claim as a claim for years 1985 through 1988, and (5) that DOR had all information necessary to know that he had been improperly taxed on his federal pension benefits. We, however, conclude that DOR did not act arbitrarily or inappropriately in declining to treat federal retirees' Arizona amended returns for 1984 as refund claims for 1985 through 1988.

¶ 48 None of DOR's public expressions, beginning in early 1989, could be reasonably understood as stating that only one amended return had to be filed to preserve refund rights for all open years. It is true that DOR's April 3, 1989 press release stated: "[T]axpayers wishing to protect any potential rights to refund as a result of this ruling may file an amended return with the Department of Revenue." But given the nearness of the filing deadline, April 17, 1989, no reasonable person would have concluded that DOR was stating that an amended return had to be filed by that date to preserve a refund claim for any year except 1984. Moreover, as we have already observed, the record contains no evidence that any taxpayer actually interpreted and relied on DOR's initial press release in the manner suggested by plaintiffs.

¶ 49 On its face, an amended return form requires a refund request set forth in a precise amount for a specifically identified tax year. Nothing about that form suggests that it pertains to any other year. Plaintiffs, or their tax preparers, may have misunderstood what was required, but there is no evidence that they did so in reliance on the initial DOR press release or any other statement by DOR.

¶ 50 DOR's decision to treat letters and documents mentioning no particular year as refund requests for all open years was admittedly expansive. It did not, however, evidence a promise or duty to make such refunds to those taxpayers who filed only Arizona amended returns for 1984. The tax court, therefore, did not err in declining to rule that those taxpayers who filed Arizona Amended Returns for 1984 effectively claimed refunds for 1985 through 1988 as well.

## D. *Denial of Class Certification*

¶ 51 Because we conclude that as a matter of law no relief was warranted on plaintiffs' complaints, we need not consider whether the tax court abused its discretion in denying plaintiffs' motion for class certification.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and RUDOLPH J. GERBER, Judge.