NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WILLIAM W., *Appellant,*

*v.*

BROOKE S., P.W., *Appellees.*

No. 1 CA-JV 13-0221
FILED 3-4-2014

Appeal from the Superior Court in Maricopa County
No. JS507174
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Law Office of James E. Holland, P.C., Mesa
By James E. Holland
*Counsel for Appellee Mother*

_____

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

_____

**G E M M I L L,** Judge:

¶1          This is an appeal from a juvenile court order severing a father's parental rights.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          William W. ("Father") and Brooke S. ("Mother") are the biological parents of P.W., who was born in 2007.  Mother and Father were married in January 2007, and a dissolution of the marriage was granted in June 2008.  Mother and Father received joint legal custody of P.W., with Mother designated as the primary residential parent and Father ordered to pay child support.

¶3          Mother testified that when Father had custody, he was irresponsible and did not adhere to Family Court orders to return P.W. to Mother at specified times or locations.  In April 2011, the juvenile court awarded Mother temporary sole legal custody of P.W.  In March 2012, the court awarded Mother permanent sole legal and physical custody of P.W. and permanently suspended Father's parenting time.   Father last exercised parenting time with P.W. in April 2011.

¶4          In June 2011 and November 2011, Father filed petitions to reinstate joint custody and to reinstate holiday parenting time, but he failed to appear at the scheduled hearing on those petitions in December 2011, and they were dismissed.

¶5          Mother filed a petition to terminate Father's parent-child relationship in May 2012.  On the first day of the severance trial in March 2013, Mother and Father both appeared and were represented by counsel.  But Father failed to appear for the second day of the trial in June 2013, and the court proceeded in absentia, with Father's counsel representing him.

¶6          On the first day of trial, Father's testimony was inconsistent and difficult to understand.  He testified that he had sent birthday and Christmas cards to P.W.  He also said he had written emails to P.W.

through her mother, but he did not introduce corroborating evidence. He further testified that he had bought gifts for P.W. but that they were at his home, and no further proof of them was offered.

¶7        Father admitted that he was behind in paying court-ordered child support and that he had absconded from work release for almost a year, from June 2011 until May 2012. Father testified he was unsure about whether he had been paying child support during the time he had absconded. When asked about failing to appear at family court proceedings, Father testified that he either did not know about the hearings or did not learn about them until the day of the hearing.

¶8        Father revealed a general lack of knowledge regarding his daughter. At trial, he did not know the name of P.W.'s pediatrician or the name of the practice. During an interview with the guardian ad litem, Father was not aware of P.W.'s stomach pains, but he did express that he missed his daughter. Father never testified, however, about his relationship with P.W. nor did he express interest in visitation beyond saying that he had tried to contact and visit P.W. through several email messages to Mother. Father admitted that, in one of the emails, he called Mother a sociopath, told Mother that she lied and hurt people with no remorse, and that she hated herself.

¶9        Mother testified that P.W. had not received any gifts, calls, or text messages from Father during the past two years. Mother also said P.W. never spoke about Father. Mother is in a serious relationship with her current boyfriend and they have discussed marriage and adoption.

¶10        The juvenile court found by clear and convincing evidence that Father had abandoned P.W. by failing to provide reasonable support and to maintain regular contact with the child. The court also found that Father made only minimal efforts to support and communicate with P.W. and failed, without just cause, to maintain a normal parental relationship. The court noted that Father used his relationship with P.W. as a tool to torment Mother and had presented nothing to refute that the alleged incidents of tormenting Mother had occurred. The court further noted that Mother had a legitimate order of protection barring Father's contact with her based on his threats to harm her, and the maternal grandparents could provide a safe, permanent, and stable environment capable of

addressing all of the child's needs and were ready, willing, and able to adopt P.W. in the event of Mother's death.[1]

¶11  Father timely appeals. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 8-235(A).

## DISCUSSION

¶12  A parent's right to "the companionship, care, custody, and management of his or her children" is a fundamental, constitutionally protected right. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). We review a juvenile court's severance order for an abuse of discretion and accept the court's factual findings unless clearly erroneous. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004). Similarly, we view the facts in a light most favorable to affirming trial court's findings. *In re Maricopa County Juvenile Action No. JS-8490*, 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994).

¶13  Father alleges the juvenile court erred (1) in not making jurisdictional findings, (2) by finding the statutory ground of abandonment as a basis for terminating his parental rights, and (3) by finding severance to be in P.W.'s best interests.

## Jurisdictional Findings

¶14  Father argues that the juvenile court erred because its findings of fact and conclusions of law did not include determinations that the court had jurisdiction, that severance was found by clear and convincing evidence, and that the case was not subject to the Indian Child Welfare Act, in accordance with the Rules of Procedure for the Juvenile Court. Father is correct that the juvenile court's formal findings, conclusions, and severance order filed August 6, 2013, did not include these necessary findings. As a result, this court entered an order re-vesting jurisdiction in the juvenile court to address its jurisdiction. The juvenile court then entered supplemental findings by minute entry on September 16, 2013, determining that the court had exclusive jurisdiction

---

[1] Additionally, Father moved to set aside the severance ruling and to reset the second day of trial, claiming that he had undergone an emergency medical procedure and could not appear on that day. The Court denied the motion when Father provided no confirming medical records after a reasonable period of time.

pursuant to A.R.S. § 8-532, Father was properly served in accordance to Rule 64 of Arizona Rules of Juvenile Procedure and Rule 5 of Arizona Rules of Civil Procedure, and the case was not subject to the Indian Welfare Act of 1978, 25 U.S.C. §§ 1901-1963. Additionally, the court had previously stated that its finding of abandonment was proven "by clear and convincing evidence" in its minute entry ruling filed July 3, 2013. On the record as a whole, the challenged jurisdictional deficiencies have been cured.

**Abandonment**

¶15        Under A.R.S. § 8-533(B), parental rights may be terminated only upon a finding that at least one statutory ground for severance has been established by clear and convincing evidence. Abandonment is one of these statutory grounds, which is defined in A.R.S. § 8-531(1):

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

The juvenile court found that Father failed to provide reasonable support or maintain regular contact with P.W. and that Father had failed to maintain a normal parental relationship with the child without just cause. The court based these findings on Father's repeated failure to pay child support, Father's failure to attempt parenting time with P.W. through Mother or P.W.'s grandparents, Father's filing of petitions to reinstate joint custody on several occasions but then failing to show up at the hearings, Father's not sending gifts or cards over the past two years other than one card in November 2011, and the absence of a meaningful parent-child relationship with P.W.

¶16        Father relies on this Court's opinion in *Calvin B. v. Brittany B.* in which we stated:

> We hold that a parent who has persistently and substantially restricted the other parent's interaction with their child may not prove abandonment based on evidence that the other has had only limited involvement with the child.

5

232 Ariz. 292, 293, ¶ 1, 304 P.3d 1115, 1116 (App. 2013). The facts in *Calvin B.* are distinguishable from the facts in this case, however. In *Calvin B.*, the mother sought protective orders in response to the father's petitions to gain fathering time, effectively using the court system as a way to block the father from having any chance to interact with the child. *Id.* at 294-95, ¶¶ 3, 7-10, 304 P.3d at 1117-18. Furthermore, the father in *Calvin B.* made continuous efforts to seek visitation by contacting the mother or the grandparents until the filing of the petition to terminate his parental rights. *Id.* The father in *Calvin B.* also had filed several petitions to reinstate parenting time and was awarded supervised visits up to and throughout the severance trial. *Id.*

¶17        In contrast, in this case Father provided no evidence to show that he has made reasonable efforts to maintain contact with P.W. Mother resorted to court action in response to misuse of parenting time by Father. In December 2012 Father filed a petition to modify child custody but failed to appear at the hearing. Father's actions are more analogous to the facts in *Matter of Appeal in Pima County Severance Action No. S-1607*, 147 Ariz. 237, 709 P.2d 871 (1985), in which the supreme court upheld a juvenile court's severance after noting that although the father had petitioned to further his visitation rights, the petition was dismissed by stipulation and the father "took no further legal action to ensure his visitation rights." *Id.* at 239, 709 P.2d at 873.

¶18        Father further asserts that nonsupport or failure to pay child support alone is not enough to establish abandonment. Although this court has previously concluded that nonsupport is not enough on its own to establish abandonment, *see In re Yuma County Juv. Ct. Action No. J-87-119*, 161 Ariz. 537, 539, 779 P.2d 1276, 1278 (App. 1989), the juvenile court here did not base its decision solely on failure to pay child support.

¶19        We conclude that sufficient evidence supports the juvenile court's findings and conclusions that Father abandoned P.W. within the meaning of A.R.S. §§ 8-533(B)(1) and -531(1).

### Child's Best Interests

¶20        To determine whether severance is in the best interests of a child, the court balances the "unfit" parent's rights against the child's rights. *Kent K. v. Bobby M.*, 210 Ariz. 279, 287, ¶ 37, 110 P.3d 1013, 1021 (2005). Termination of the parent-child relationship is in the child's best interests if the child would be harmed from continuation of the relationship or would benefit from the termination. *Mary Lou C.*, 207 Ariz.

at 50, ¶ 19, 83 P.3d at 50. The best interests determination requires a preponderance of the evidence, *Kent K.*, 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018, and we view the facts in a light most favorable to affirming the trial court's findings. *JS-8490*, 179 Ariz. at 106 876 P.2d at 1141.

**¶21** Father has repeatedly violated court orders regarding parenting time and has been unreliable in attending court dates and making child support payments. The evidence revealed that Father has willingly used P.W. as a means to torment Mother. The juvenile court found that the record was almost devoid of evidence that Father had genuine concern or affection for P.W.

**¶22** Furthermore, P.W.'s grandparents have expressed a willingness to adopt P.W. in the event of Mother's death or incapacity, and the juvenile court found that P.W. is readily adoptable and that severance will further provide opportunity for stability and permanency should Mother die or become incapacitated. Although this court recently issued a decision explaining that adoptability alone is insufficient to make a best interests determination for a child already in a stable and permanent environment, s*ee Jose M. v. Eleanor J.*, __ Ariz. ___, ___ ¶ 23, 316 P.3d 602, 606-07 (App. 2014), the use of P.W. to torment Mother demonstrates an additional factor that supports the juvenile court's best interests finding. On this record, the juvenile court did not abuse its discretion in finding that severance was in the best interests of P.W.

## CONCLUSION

**¶23** We affirm the juvenile court's judgment.



Ruth A. Willingham · Clerk of the Court
F I L E D : mjt